## J. M. GUFFEY v. A. P. CLEVER ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued November 2, 1891—Decided January 4, 1892.

(a) A lease of land for oil and gas production, with no clause authorizing an assignment thereof, provided that if oil or gas were found, the lessee should have the refusal for three months of a lease of an adjoining tract of the lessor, on terms " that may be equal to the best terms offered by any other person or persons therefor."

(b) The lease having been subsequently assigned, the lessor entered into a written contract with the assignee providing for certain extensions of the time of performance and for the payment of increased royalties, and that the original lease " shall remain in full force in all particulars in which the same is not hereby modified."

(c) The assignee, finding oil, notified the lessor of his election to take the lease of the adjoining tract, and was fraudulently informed by the lessor that he had been offered $20,000 for the lease. Relying upon such representation, the assignee paid said sum and accepted said lease, although the best offer that had been made to the lessor was $10,000:

1. The position that the assignment of the first lease did not carry with it the option for the second lease, was untenable, in view of the new agreement between the lessor and the assignee, especially providing for the continuance of the unmodified covenants of the first lease; and the assignee was entitled to the new lease on the best bona-fide offer made.

2. In trespass for the fraud, a proper measure of the damages recoverable, was the difference between the amount paid by the assignee for the second lease, and the best offer actually received by the lessor; and offers of evidence on the part of the lessor showing the actual value of the second lease, were irrelevant and inadmissible.

3. Where the vendor of property makes fraudulent representations or is otherwise guilty of fraud in the contract, the purchaser may stand to the bargain and recover damages, or may rescind the contract and recover back the money paid: Heastings v. McGee, 66 Pa. 384; so that damages were recoverable without tendering a reconveyance of the lease.

Statement of Facts.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 230 October Term 1891, Sup. Ct.; court below, No. 97 June Term 1890, C. P. No. 1.

To the first Monday of April, 1890, J. M. Guffey brought trespass against A. P. Clever and Charles Scarborough. Issue.

At the trial, on March 3, 1891, evidence was submitted of the following facts:

On August 10, 1888, A. P. Clever demised a lot of about fifty acres in Stowe township, adjoining another tract of the lessor, to G. C. Garnier and S. S. Smith, for the production of gas and oil, without any provision extending the covenants of the lease to the heirs, executors and administrators, or assigns of the parties. It was provided, however, that " in case oil or gas is found on said premises as aforesaid, then the said parties of the second part shall have the refusal, for the term of three months, of the other lands of the said parties of the first part lying in the same locality, on terms for the lease thereof that may be equal to the best terms offered by any other person or persons therefor."

On December 4, 1888, Garnier and Smith assigned the lease and the leasehold created thereby to J. M. Guffey, the plaintiff herein; and on February 12, 1889, A. P. Clever and J. M. Guffey executed an instrument under seal extending the time for completing the well then drilling on the premises, in consideration of which said Guffey agreed to pay to said Clever an increased and graded royalty, " to be paid in addition to all royalty or other payments provided for in said lease, and said lease shall remain in full force in all particulars in which the same is not hereby modified."

The well when completed proved to be a good producer, and on April 23, 1889, Guffey sent a letter to Clever notifying the latter that he would take a lease on the adjoining tract of one hundred seventy-nine acres, on the terms provided for in the supplemental agreement of February 12, 1889. Thereupon on April 29, 1889, Clever sent to Guffey the following letter:

" J. M. GUFFEY, ESQ.:

" Dear Sir: In answer to yours of April 23, 1889, I beg leave to say that I have an offer to lease the other lands owned by

me in the same locality as your fifty-acre lease from me, to wit, a farm in Stowe township, containing one hundred and seventy-nine and one half acres, for one eighth of the oil and a bonus of twenty thousand ($20,000) dollars, and one thousand ($1,000) dollars per annum for each gas well from which gas may be utilized. In this offer I have reserved nine and one half acres, upon which no wells are to be drilled without my consent in writing. This lease is to continue for five years, and as long thereafter as oil or gas is to be found in paying quantities : Provided that one well shall be put down through the oil-bearing rock in that district, and completed within sixty days after the date of the proposed lease ; and a second well completed within seventy days after the date of said proposed lease ; and a third well completed as aforesaid within eighty days after the date of the said proposed lease. These three wells are to be located by me, and a condition of the lease is that the strongest and heaviest casing shall be used from the surface to a distance of fifty feet below the coal, and such casing shall be permitted to remain in the well after abandonment, for the purpose of protecting said coal. The gentleman making this offer is Mr. Peter Goettman, of Atwood street, Oakland, Pittsburgh. If you desire the property under the terms of your lease of August 10, 1888, you are hereby required to notify me of such intention within ten (10) days, and comply with the above terms on or before the end of three months after the date upon which you struck oil on your lease with me of August 10, 1888."

Thereupon, on May 10, 1889, a lease was executed and delivered by A. P. Clever to J. M. Guffey in consideration of twenty thousand dollars paid in cash by the latter, demising the one hundred ninety-seven acre tract for oil and gas production upon substantially the same terms as were set out in the foregoing letter. Guffey had made no inquiry of Goettman as to whether the representations of the letter were true or not, but accepted the lease of the adjoining tract on the faith of said representations.

On the trial, the plaintiff introduced evidence tending to show that the alleged offer, set forth in the letter with such particularity as to terms, was a mere pretence, and that the only genuine offer was one made by a Mr. Aiken, offering ten

Charge of Court below.

thousand dollars for a lease of the land on terms afterward to be agreed upon. There was testimony to the effect that Goettman was a man of means; that Scarborough, a son-in-law of Clever without means, induced Goettman to permit his name to be used as having made the offer on the terms given; that Goettman, not intending to become the lessee himself, was to "back" Scarborough as the lessee and to have Scarborough's name as security, and that for his kindness to Scarborough Goettman was paid forty dollars by Clever. The defendants introduced testimony to meet the case as presented by the plaintiff, and made various offers to prove the actual value of the one hundred seventy-nine acre tract, as an oil-producing farm, at the time of the lease to the plaintiff of May 10, 1889, for the purpose of showing "that the bonus paid by Mr. Guffey is not in excess of the value of the farm leased for oil and gas purposes, in the estimation of those who knew that territory in that regard at that time."

Objected to as irrelevant and incompetent.

By the court: Objections sustained; exceptions.[19 to 22]

At the close of the testimony the court, SLAGLE, J., charged the jury orally as follows:

[It is claimed by defendants' counsel that that assignment did not carry this agreement with it; that there is no clause in the lease authorizing an assignment of it, and that it is not made to the heirs, executors, administrators and assigns. A contract is, like any other property that a man owns, transferable. But I do not think that that is a material question in this case, because, subsequently, on the twelfth day of February, 1889, Mr. Clever entered into a contract with Mr. Guffey, in which they changed the terms of this lease to some extent, but provided further, that "said lease shall remain in full force in all particulars in which the same is not hereby modified;" and it seems to me that that would make an agreement between Mr. Clever and Mr. Guffey which would carry that clause with it.] [8]

[But, even that is not material, because both these parties subsequently acted upon the theory that Mr. Guffey had the right to the option; as it appears in the testimony of Mr. Guffey and is not denied by Mr. Clever, in fact he admits it, that some time prior to the twenty-third day of April, 1889, he, assuming that

Charge of Court below.

he had this right, offered Mr. Clever five thousand dollars as a bonus for this property, which offer was not accepted. But on the twenty-third day of April he wrote a letter which is not now here and which I will have to give you from recollection; you have heard it read two or three times. In that letter, Mr. Guffey wrote to Mr. Clever substantially this : " You know that under the lease assigned to me I have a right to a lease of the balance of the property upon terms equal to those which may be offered by any other person. You will therefore notify me what offer you have, and I am ready to comply with my contract and take the lease upon the same terms." That is about the substance of the letter. Now, Mr. Clever, in answering that, did not say " No, you have no right to this lease under your assignment ; " but, recognizing his right, (and if there was any dispute about it he ought to have stated it then and there,) recognizing that right, he says in the letter of April 29th, " I beg leave to say I have an offer to lease the other lands belonging to me in the same locality as your fifty acres," etc. Then he goes on to state all the terms, and states by whom that offer was made. So that, even if Guffey did not have a right under this lease and assignments, or under his agreement with Clever, to this option, they dealt upon that theory ; and, therefore, if Mr. Clever made statements in reference to it, he was bound to make those statements truthfully, and if he made them falsely, and Mr. Guffey relied upon them and paid his money upon them, it would be deception for which he would be responsible.] [9]

[It is claimed, however, that Mr. Guffey had no right to rely upon this statement of Mr. Clever as to this offer ; that he was bound to hunt up Mr. Goettman and find out whether it was true or not; and failing to do that, he is not entitled to recover. There are some cases in which a man has no right to rely upon the statements of another. That is where it is a matter of opinion, or where the fact is one which is equally open to the party to whom the representation is made ; but I do not understand that this is a case of that sort. In this case, the fact stated was one that was peculiarly within the knowledge of Mr. Clever. He stated it upon his own veracity, and Mr. Guffey was not bound to assume that he was telling what was not true. And it is not certain that if he had gone to investi-

gate, he would have discovered the real truth. So, I say to you that, under the circumstances, he was not bound to go to Mr. Goettman, but had a right to rely upon what Mr. Clever said.] [10]

[Then we come down to this statement in the letter as follows: "The gentleman making this offer is Mr. Peter Goettman, of Atwood street, Oakland, Pittsburgh." That is admitted by Goettman, by Clever and by Scarborough to be untrue; therefore it was a false statement which Clever knew to be false, and made to the man with whom he was dealing, and upon the faith of which it is unquestioned this money was paid. And Scarborough admits that he knew of the letter at the time it was sent, and subsequently made up this memorandum which was supposed to be the terms of this lease. Therefore, I say to you that, under the undisputed evidence in this case, the plaintiff is entitled to a verdict for something, because the defendant had admittedly imposed upon him, deceived him in this contract, and made a false representation to him.] [11]

[That is, however, not the most material question in the case. If you find that there was no actual damage done, your verdict would be for what are called nominal damages, say, six and one fourth cents. But that much, at least, he would be entitled to receive.] [12] And now, gentlemen, the question is, what is the damage? And the plaintiff must make out his case, must show damage. When the case was first presented, there was, as you observed, some want of certainty upon the part of both court and counsel as to what would be the measure of damages in such a case. If there had been no offer at all made to Mr. Clever, under this contract, the difficulty would not have been very great. In my judgment, the question would then have been, what would have been a fair offer for such property; not what it was actually worth, but what any person might be reasonably expected to offer for it.

[It is in evidence, undisputed, that an offer was made. Mr. Aiken testifies that he made an offer for the lease of ten thousand dollars in good faith, for a responsible party who was able to carry it out, and who intended to carry it out if it had been accepted. He says that there was nothing said about what wells should be put down or what royalty should be paid, but that that was to be a matter of negotiation; he supposed, of course, a reasonable arrangement in that regard. That is a matter you

Charge of Court below.

may consider hereafter; but, at all events, he offered a bonus of ten thousand dollars, and I think that there you get a basis for these damages, and can start from that. If that was the only offer that was made, then the difference between that and what Mr. Guffey was compelled to pay by reason of this misrepresentation, would be the measure of damages to that extent. There is a question in reference to the wells of which I will speak hereafter. But the difference between what he paid and what was really offered is the measure of damages, for this reason: This is not a case of the purchase of property in the ordinary way, but it is a question, you will observe, of contract; therefore, the cases which the counsel for the defendants refer to as to representations and measure of damages, etc., are not applicable to this case; because it does not make any difference what this property was worth. It turned out not to be worth a great deal, but if it had been worth millions, Mr. Guffey was only bound to pay what he had agreed to pay; and from this contract, as I understand it, he had an option to take the property at what any person else would offer.] [13]

[Now, when he, on the twenty-third of April, said, "I will take the property under the terms of my option," that made a perfected contract, as I illustrated to counsel yesterday. If I sell you a horse, at whatever price Mr. Reed will fix, and Mr. Reed fixes the price, that is a contract, and I am bound to take that. In this case, when Mr. Guffey, having an option, says, "I will take the property upon the terms offered to you by any other person," he is bound by that. The contract had become perfected, and the only question was the fixing of the price; and the mode of fixing the price was provided by the original agreement; that was, by any offer made to Mr. Clever. When Mr. Aiken made an offer of ten thousand dollars, Mr. Clever was bound to take and Mr. Guffey was bound to give ten thousand dollars for that lease, but was not bound to give any more. It does not make any difference what it was worth; whether less or more, Guffey was bound to pay the ten thousand dollars, and Clever was bound to take it.] [14]

[But Mr. Clever says, "I had another offer;" and that, to my mind, is the only question in this case. He says, "I had another offer of twenty thousand dollars." If he had a bonafide offer of twenty thousand dollars, which he believed, and

Charge of Court below.

had reason to believe, would be carried out, then, if you believe it was intended to be carried out in good faith, then I think, as that was the same amount as Guffey paid, that the damages would be nominal.] [15] The case, then, in my judgment, resolves itself into a single question of fact for you to determine, as far as the damage is concerned.

[To a certain extent, the burden of proof is upon the plaintiff. He must make out his case; must prove deception, and must prove the damage. But, having proved the deception, and the damage being a question to be determined by a fair offer made, I think the burden is upon the defendant to satisfy you that an offer was made, if he undertakes to set that up as a defence to damages.] [16] Therefore, he must satisfy you by the weight of evidence that that was a bona-fide offer which would have been carried out, or which he would have a right to expect would be carried out. Is that the fact?

In determining that, you look at all the circumstances and make up your minds whether you believe that was a fair, honest offer; whether Mr. Clever believed or had a right to believe that it was a fair offer, that was intended to be carried out in case Mr. Guffey did not exercise his option. In determining that, you consider all the circumstances, precedent, subsequent and during the time, and the first thing you will observe will be this:—I do not propose to go into the testimony at any length,—the first thing that you will observe will be this: that in the letter of the twenty-ninth of April, 1889, Mr. Clever told what was not true: " The gentleman making this offer is Mr. Peter Goettman, of Atwood street, Oakland, Pittsburgh." . . . . [When a man does do that (tells a lie,) it is ordinarily for a purpose. A man does not often tell a lie unless he has an object in view, and you have a right to consider the fact that in making this statement to Mr. Guffey, Mr. Clever told what was not true. And that has some bearing upon the question of whether or not there was such a contract as Clever now says there was. He said he had a contract with Goettman. That is not true, he says now, but that the contract was with Scarborough.] [17] You will consider that. Then you will ' look at the details, and consider whether they are reasonable and probable; and you find this fact, that Mr. Goettman, a comparative stranger, a mere acquaintance of Mr. Scar-

Charge of Court below.

borough, who has no means whatever according to their story, agreed to raise twenty thousand dollars and pay it over to Clever, Scarborough's father-in-law, as a bonus for a lease of Clever's property. Is that reasonable? Is it reasonable that Mr. Goettman would do that without any security, without any arrangement as to rate of interest, as to how and when he should be paid? And then, afterwards, that ten thousand dollars should be paid over to Mrs. Scarborough, the wife of the man who was getting Goettman to raise the money to pay to Clever?

[You take all those things into consideration, and if you believe that this offer of Scarborough's was made with the honest intention of carrying it out, and with a probability of its being carried out, and that Clever believed or had reason to believe that, then the damage would be the difference between that and what Mr. Guffey actually paid. If you do not believe that, then you go back to the only other offer that was made, the Aiken offer, which was ten thousand dollars, and the difference between that and what Guffey paid, with interest from the date of payment, would be the damage, so far.] [18]

The defendants' counsel request the court to charge

1. That under the terms of the lease in evidence, from A. P. Clever to Garnier and Smith, of date August 10, 1888, it was provided that " in case oil or gas is found on said premises as aforesaid, then the said parties of the second part shall have the refusal, for the term of three months, of the other lands of said parties of the first part lying in the same locality, on terms for the lease thereof that may be equal to the best terms offered by any other person or persons therefor." If, therefore, by the different assignments of the contract of leasing, the said lease became vested in J. M. Guffey, the plaintiff, there was no privity of contract between said Clever and said Guffey, respecting the clause in said contract of leasing, relating to the refusal of other lands of said Clever and wife, and respecting the leasing of which the deceit and fraud is alleged in this case, and said J. M. Guffey dealt as a stranger or at arm's length with said Clever, and it is incumbent upon the plaintiff to show that there was fraud and deceit used by said Clever as to value, quality and quantity of said lands, before the plaintiff can recover in this action.

Charge of Court below.

Answer: This is refused. Whether or not the assignment of the lease by Garnier and Smith to Guffey carried with it the right to the option, seems to be immaterial, in view of the fact that a new agreement was made between Clever and Guffey, which especially recognized the lease and provided for its continuance in every particular, and the subsequent transactions were based upon the right of Guffey to exercise this option.[2]

2. That, under the contract of leasing in evidence between A. P. Clever, and G. C. Garnier and S. S. Smith, of date August 10, 1888, the provision therein relating to the refusal of certain other lands of the defendant, was personal as to said Clever, Garnier and Smith, and did not pass by the various assignments thereof in evidence, to said J. M. Guffey, so as to be obligatory on said Clever to make, or on said J. M. Guffey to accept or take a lease of the other lands of said Clever " on terms for the lease thereof that may be equal to the best terms offered by any other person or persons therefor; " and when said Clever and said Guffey came together to make the lease for the other lands of the said Clever, even if the said Clever falsely affirmed that the sum of twenty thousand dollars bonus for said lease had been offered by Peter Goettman, which assertion induced said J. M. Guffey to lease and pay for said lease, as a bonus, the said sum of twenty thousand dollars, and was therefore deceived as to the value, the plaintiff is not entitled to recover, and your verdict should be in favor of the defendants.

Answer: This is refused for the same reasons as given in answer to the first point.[3]

3. In the sale or leasing of lands, the false and fraudulent representations necessary to sustain an action of deceit must relate to the quantity, quality, value or title of said lands; and even though false representations were made as to the opinions had by other persons as to the value thereof, or false representations as to offers alleged to have been made by others for said lands, such false representations will not warrant a recovery by the plaintiff.

Answer: This is refused. The point is correct as a general proposition, but it is not applicable to the facts of this case.[4]

4. The lease between A. P. Clever, G. C. Garnier and S. S. Smith, of date August 10, 1888, was not by the terms and

Arguments.

conditions thereof assignable; and under the different assignments thereof in evidence, from Garnier and Smith, the said J. M. Guffey had not become vested with that portion of the contract, at least, relating to the refusal of a lease on the other lands of the said A. P. Clever; and no allegations or misrepresentations on the part of A. P. Clever as to the value of said lands, or as to the bonus offered or terms of leasing of said lands by other persons, will entitle the plaintiff to a verdict in his favor.

Answer: This is refused for the same reason as given in answer to the first point.[5]

5. That before the plaintiff can recover in this case under all the circumstances, he must either surrender said lease or deliver possession of the said premises.

Answer: Refused.[6]

6. That under all the evidence in this case the verdict of the jury must be in favor of the defendants.

Answer: Refused.[7]

The jury returned a verdict for the plaintiff for the sum of $11,091.67. A rule for a new trial having been discharged and judgment entered, the defendants took this appeal, specifying that the court erred:

2–7. In the answers to the defendants' points.[2 to 7]

8–18. In the portions of the charge embraced in [ ] [8 to 18]

19–22. In the refusal of the defendants' offers.[19 to 22]

*Mr. James Fitzsimmons* (with him *Mr. John S. Robb*), for the appellants.

That the lease to Garnier and Smith was personal, unassignable, and its covenants did not run with the land, counsel cited: 1 Sutherland on Dam., 204; 12 Am. & Eng. Encyc. of Law, 1009; Winton's App., 111 Pa. 387; Herbaugh v. Zentmyer, 2 R. 160. That the plaintiff could and should have protected himself by ordinary care and diligence in inquiring of Goettman: Bushman v. Codd, 52 Md. 202; Haycraft v. Creasy, 2 East 92: Addison on Torts, 482, § 486; 1 Story's Eq. J., 3d ed., §§ 199–200; Davis v. Insurance Co., 8 Ch. D. 469; Kintzing v. McElrath, 5 Pa. 467; Laidlaw v. Organ, 2 Wheat. 178; Hazzard v. Irwin, 18 Pick. 95; Henshaw v. Robins, 9 Met. (Mass.) 83; Fisher v. Mellen, 103 Mass. 503. As to the meas-

ure of damages: 2 Sedgw., §§ 440, 778; Tracy v. Albany Co., 7 N. Y. 472 (57 Am. Dec. 538); Walker v. France, 112 Pa. 203.

*Mr. D. T. Watson* and *Mr. W. F. McCook,* for the appellee.

As to the covenant in the lease to Garnier and Smith, counsel cited: Napier v. Darlington, 70 Pa. 64; and upon the measure of damages: Veazie v. Williams, 8 How. 134; Heastings v. McGee, 66 Pa. 384.

PER CURIAM:

This was stated to be an " action in trespass for damages by fraud." A. P. Clever, one of the appellants, owned two pieces of land, one of fifty acres, the other of 179½ acres. In the year 1888 he leased the fifty-acre lot, for oil and gas purposes, to Garnier and Smith. They assigned this lease to J. M. Guffey, the plaintiff, on December 4, 1888. The lease contained this clause: " And, in case oil or gas is found on said premises as aforesaid, then the said parties of the second part shall have the refusal, for the term of three months, of the other lands of the said parties of the first part lying in the same location, on terms for the lease thereof that may be equal to the best terms offered by any other person or persons therefor." On February 12, 1889, Clever and Guffey made a written supplement to this lease, based on a new consideration, by which the time was extended for completing the first well and the oil royalties were increased, in which they declare that the original lease then owned by Guffey " shall remain in full force in all particulars in which the same is not hereby modified."

Guffey was successful in finding oil on the fifty-acre tract, and on April 23, 1889, notified Clever in writing that he elected to take a lease of the 179½ acres, " on terms for the lease thereof that may be equal to the best terms offered by any other person or persons therefor." In reply to this offer, Clever notified Guffey that he had been offered twenty thousand dollars for a lease of the property referred to; whereupon Guffey took the lease at that price and paid the money. Subsequently he learned that the offer to Clever of twenty thousand dollars was not bona fide, and that the best real offer he had received was ten thousand dollars. This suit was then brought to recover dam-

ages for the deceit, and the jury found a verdict for the plaintiff for the difference between the offer of ten thousand dollars and the amount paid by Guffey.

The verdict was abundantly sustained by the evidence, and we find nothing in the numerous specifications to indicate error on the part of the learned judge below, in the manner of submitting the case to the jury.

The position that the assignment of the lease did not carry with it the option to Guffey cannot be sustained, in view of the fact of the new agreement between Clever and Guffey, which especially recognized the lease and provided for its continuance in every particular. Nor do we see any error in the ruling of the court upon the measure of damages. If ten thousand dollars was the highest bona-fide offer received by Clever, Guffey was entitled to the lease at·that price. If, therefore, he had been induced by the artifice and fraud of Clever to pay twenty thousand dollars, he was entitled to a verdict for the difference between those sums. In view of this, the learned judge was clearly right in rejecting the evidence of the value of the lease, as bearing upon the question of the damages. Whether its intrinsic value was much or little, Guffey was entitled to have it for ten thousand dollars, and he had been compelled to pay double that sum.

The contention that the plaintiff could not recover without having made a tender of the return of the lease, is fully met by Heastings v. McGee, 66 Pa. 384, where it was held that " where the vendor of personal property makes fraudulent representations, or is otherwise guilty of fraud in the contract, the vendee may stand to the bargain and recover damages, or may rescind the contract and recover the money paid." Here the vendee elected to stand by his contract, and recover back the money which he paid by means of the fraud. That he had a right to do so is clear upon all the authorities.

Judgment affirmed.