## Emery v. Third National Bank of Pittsburgh, Appellant.

Argued March 23, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Lawrence D. Blair,* with him *Moorhead & Knox,* for appellant.

*Oliver K. Eaton,* with him *J. R. Sheppard,* for appellee.

OPINION BY MR. JUSTICE MAXEY, April 9, 1934:

Plaintiff has recovered three successive verdicts in this case. The verdict in the first trial was set aside and a

new trial granted. Judgment on a verdict was entered in the second trial, and an appeal was taken to this court. We ordered a new trial. At the third trial the plaintiff secured a verdict in the sum of $11,587.90. The defendant made motions for judgment n. o. v. and for a new trial. These were refused, and defendant has appealed.

When this case was previously before us. (see 308 Pa. 504, 162 A. 281), we held that it was a case for the jury on the question: Was the value of the assets of the Highland Coffee Company misrepresented by the defendant and did plaintiff rely on these misrepresentations? We there held that "a bare suspicion or an opportunity to learn the truth through the exercise of reasonable diligence does not constitute knowledge of fraud sufficient to prevent recovery." We also said that "the jury had a right to consider the respective situations of the parties to this transaction. The plaintiff was a mechanical engineer. The defendant was represented by its president, and when the bank president made a statement about the assets of the coffee company, which the bank had long controlled, the plaintiff had a right to assume that this bank president knew the exact facts as to the financial condition of the company and would disclose them." Appellant cites Mahaffey v. Ferguson, 156 Pa. 156, 27 A. 21, which was a case involving the sale of a tract of timber land. In that case this court said (page 168): "If before the completion of the sale they [appellee's agents] were advised as to the tricky character of appellant's agent, and with their suspicions thus aroused they chose not to investigate fully, it was their fault. The repeated examinations, the employment of experts, the suspicions, the refusal to complete the sale, because of the lines, show clearly there was no warranty made or intended, and that the parties dealt with each other with their eyes open, and at arms length, and representations made under these circumstances did not constitute a warranty." In the case before us the appellee had no

advice "as to the tricky character of appellant's agent."
The appellee had no "suspicions aroused." He did not
deal with the defendant "with his eyes open, and at arms
length." Appellant attempts to distinguish the case of
Bower v. Fenn et ux., 90 Pa. 359, cited by us in the
former opinion, from the case now before us on the
ground that there "the plaintiff, who was the seller, had,
in addition to falsely representing the value of the drug
store, persuaded defendants not to make their own in-
vestigation on the ground that it would disturb his clerks
and take too much time." There is nothing in that case
to show that defendant was *prevented* from making an
examination of the drug store before purchasing it; it
was open for any investigation he might insist upon mak-
ing. This court said in that case: "Fenn [the buyer]
relied upon the statements concerning the value of the
property, made by Bower [the seller], and, consequently,
he dealt upon the faith of those representations. ......
If Bower chose to permit Benn to contract with him, on
the faith of his statements of value, he was bound not
merely to believe, but to know, that they were true. This
very point is ruled in the case of Fisher v. Worrall, 5
W. & S. 478."

This principle is laid down in 26 C. J., section 59, page
1142: "It is held by the weight of authority that ordi-
narily representations are not actionable unless the
hearer was justified in relying thereon in the exercise of
common prudence and diligence. But the respective
character, intelligence, experience, age, and mental and
physical condition of the parties are considerations
which may vary this rule or render it of small impor-
tance, and the rule has been judicially stated in a form
recognizing its limitations."

In 12 R. C. L., section 113, page 359, is stated this
principle: "In addition to actual reliance, a party as-
serting fraud of a false representation must have had the
right to rely thereon; wherefore the representation must
have been made to him either directly or indirectly, and

must have been of such a nature that it was reasonably calculated to deceive him, and to induce him to do that which otherwise he would not have done. The rule of law is one of policy. Is it better to encourage negligence in the foolish, or fraud in the deceitful? Either course has obvious dangers. But judicial experience exemplifies that the former is the less objectionable, and hampers less the administration of pure justice. The law is not designed to protect the vigilant, or tolerably vigilant, alone, although it rather favors them, but is intended as a protection to even the foolishly credulous, as against the machinations of the designedly wicked. ......
Where the means of obtaining information are not equal, the positive representations of the person who is supposed to possess superior means of information may be relied on."

In Hexter v. Bast, 125 Pa. 52, 71, 17 A. 252, this court said: "The general rule is, that to support an action of deceit, properly so called, it must appear that the fraudulent representation complained of was untrue; that the defendant knew, or ought to have known, at the time it was made, that it was untrue; that it was calculated to induce the plaintiff to act upon it, and that, believing it to be true, he was induced to act accordingly: Cox v. Highley, 100 Pa. 249."

Appellant also contends that the contract so far as plaintiff was concerned was executory at the time he made payments on his note and that these payments constitute waiver of fraud. We discussed this question fully in our former opinion. We see no reason to change the ruling then made. In Heastings v. McGee, 66 Pa. 384, 386, which was an action on the case for deceit in the sale of a horse, this court said: "In all cases of fraud, the vendee, who alone has the right of disaffirmance, may remain silent, and bring his action to recover damages for the fraud, or may rely on it by way of defense to the action of the vendor, although there has been a full acceptance by him, with knowledge of the defects

in the property. An affirmance of the contract by the vendee, with such knowledge, merely extinguishes his right to rescind the sale. His other remedies remain unimpaired. The vendor can never complain that the vendee has not rescinded." See also Guffey v. Clever, 146 Pa. 548, 23 A. 161. In Miller v. Central Trust & Savings Co., 285 Pa. 472, 486, 132 A. 579, this court said: "Affirmance of the contract is not a waiver of the fraud; nor does it bar the right to recover; it does bar a subsequent rescission."

Appellant also contends that "plaintiff's admission that he relied on some verbal guaranty defeats his action on the alleged representations," and that "the fact of this guaranty cropped up in the testimony." On cross-examination plaintiff testified that Mr. Reed (the bank's president) said that "the bank would agree—the bank owned and controlled it [the coffee company] and that they would guarantee me that I could not lose a penny." We do not find in this testimony of the plaintiff a sufficiently substantial departure from the cause of action sued upon to justify a reversal in this case. A few seconds before making the answer quoted, he was asked on direct examination: "Would you have made this investment by purchasing this stock if you had known the assets as set forth on Exhibit No. 1 were not correctly represented?" He answered: "No, sir." It is evident that the witness in using the word "guaranty" as he did simply meant that he was at all times relying on Reed's representation as to the value of the company's assets, and that this representation was accepted by him as a sufficient "guaranty" that he "could not lose a penny." There is no technical guaranty pleaded in the statement of claim. The statement pleads that defendant represented that "the said financial statement showing gross assets at $76,053.32 was a true and correct statement of the value of said assets." The proof sustained this allegation.

We think it unnecessary to discuss any other questions raised on this second appeal as all matters were

fully covered by the opinion previously filed. We find no errors in the trial of this case that call for another jury submission. In the opinion filed by the court below is this statement: "The full bench has carefully examined and considered the record and believes that the case was fairly tried." We agree with this.

The judgment is affirmed.