## Rice *et al. versus* Olin, Executor, &c., of Scofield.

1. Where there has been fraud on the vendee in a contract of sale, he may rescind on the discovery of the fraud; or he may defend against payment of the purchase-money to the extent to which he is injured.

2. When an answer to a point is obscure or equivocal it may be cured by expressions in the general charge, but not when it is palpably wrong.

3. Rice purchased land, paid part of the purchase-money and for the remainder he gave a mortgage on which also he made payments. In a sci. fa. on the mortgage he defended on the ground that the character of the land, &c., had been fraudulently misrepresented to him. *Held*, that the measure of his damages was the difference between what he agreed to give and what the land was then actually worth.

4. Rice appeared to the scire facias and afterwards was adjudged a bankrupt; the assignee in bankruptcy asked to withdraw Rice's appearance. *Held*, that the assignee could not withdraw the appearance nor interfere with Rice's defence against the mortgage.

5. The land after issuing the scire facias was sold subject to the mortgage on a judgment against Rice. *Held*, that Rice might defend against the mortgage.

6. Whether the purchasers under the judgment could attack the consideration on the mortgage, not decided.

October 21st 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Erie county*: Of October and November Term 1875, No. 215.

This was a scire facias sur mortgage, issued July 6th 1872, by John Scofield against Daniel Rice, who was served, appeared to the case and filed an affidavit of defence. On the 26th of June 1873, the death of the plaintiff was suggested, and David Olin, his executor, substituted. Afterwards the land covered by the mortgage was sold under judgments against Rice—subsequent to the mortgage—to James Wadsworth and Henry A. Traut, who, on their own application, were on the 10th of May 1875 placed on the record as defendants. On the same day Henry Ball, assignee in bankruptcy of Rice, filed in the case a paper, setting forth that Rice on the 15th of February 1875, had been declared a bankrupt; that all his estate had been duly assigned to Ball on the 24th of March 1875; that the property covered by the mortgage had been sold on judgments younger than the mortgage; that the estate of Rice had no interest in the suit, and asked "leave to withdraw all appearance in behalf of Rice and his estate."

The defence was that the mortgage had been given to secure part of the purchase-money of land sold by Scofield to Rice, and that Rice had been induced to buy the land at a price far beyond its value, through the misrepresentations of Scofield as to its character, quality, &c.

The cause was tried May 12th 1875, before Vincent, P. J.

The plaintiff gave in evidence, mortgage dated May 24th 1866,

[Rice *v.* Olin.]

from Rice to Scofield, to secure the payment of $4400, payable in four equal annual payments, the first to be made May 24th 1867.

The plaintiff further proved the sheriff's sale to Wadsworth and Traut, and rested.

The defendants gave in evidence, deed Scofield to Rice, dated May 24th 1866, for the land mentioned in the mortgage; the consideration being $5825. They gave evidence also of the payment of $1100, the instalment due May 24th 1867, and payments in different sums up to July 7th 1871, amounting in all to $1330, towards the remainder of the purchase-money.

The principal evidence as to the sale of the land and the representations by Scofield was from John Heibeck, who testified:—

"Was present when Dan Rice and Scofield were negotiating for sale of this land. At a conversation which was in front of Rice's house in Girard, a day or two before deed was made, Rice said he wanted to buy a timber lot that had whitewood, ash, hemlock, chestnut, and all kinds of sawing and building timber on it. Scofield said he had just such a piece of land. Was good wheat land as any along the ridge road. Said was nice level piece of land. He said was about 100 acres of the land in timber of the 175 acres in the lot. They then agreed that Rice should go up and see the farm the next day. Rice went to farm with me. Met Scofield about mile and half from farm going towards Girard. Rice wanted him to go back with us and show us the land, and where it was. Scofield refused to go back, saying he was unwell and could not ride. He then said to Rice that he could depend that the land was just as he had told him in Girard the day before. Rice then said he would take his word and take the farm and would make out papers next day. Rice and I drove on to the farm, but did not know where lines were, nor whether on one side or on both sides of the road. The house is near north side of the farm. I lived on farm three years. Could not see from house or driving along the road how it lay or how much timber was on it. * * * Was beech and maple and hemlock on land, but most of hemlock was in a gully where could not get it. No sawing or building timber. Part of land is smooth and part is broken and hilly. Are two gullies running through it. Banks of creek 25 to 30 feet high. Not accessible from one side to other on this tract with a team. Land smooth enough, except the gullies. Rather poor soil. Could not raise good crops of wheat on it. Farm not worth then in my opinion over $2000. If as Scofield represented it to be, would have been worth $5000 to $5500."

There was evidence of the same kind and from a number of witnesses.

The plaintiff, in rebuttal, gave evidence in answer to the plaintiff's case.

The court charged:—

[Rice *v.* Olin.]

* * * "The scire facias was not issued until between May and September 1872, or six years or more after the making of the deed, and after the conversation with Wright, during all of which time Mr. Rice retained the land, made payments thereon running down to July 1871, and visited the land once or twice a year, and so far as the evidence shows, never even made any complaint of fraud or misrepresentation on the part of Scofield. [The evidence of Heibeck shows that Rice went upon the land before the deed was made, and he therefore had a full opportunity for inspection of its surface, its soil and its timber], and if he did not use his opportunities, he cannot complain now, unless by some contrivance on the part of Scofield he was induced not to use his opportunities for examination. The evidence further shows that Rice has cut and carried off timber and fire-wood from the land, and has cleared up some of it, and Mr. Teller tells you that the land is not worth now by 30 per cent. as much as it was in 1866. Amos Milks testifies that the farm has run down since Rice bought it. , John Sherman says land was worth $25 per acre in 1866, and not over $15 or $16 now, and that farm is now in a very bad state. [Rice has never tendered back the farm to Scofield, nor did he at any time since the sale offer to place Scofield in as good a position as he was at the time of sale, and this he should have done, for peradventure, had he done so, Scofield would have returned the purchase-money, could he have been placed in as good a position as he was in when he parted with his land.]

"If a vendee of lands claims to have been defrauded by misrepresentations made to him as to a valuable property in the land, under such circumstances as would make them a fraud upon him, he should make known the fraud as soon as he reasonably can after it is discovered, and he will not be permitted to retain the property and derive benefit from it, and then set up the fraud as a defence to the purchase-money, and what is reasonable time is a question of law for the decision of the court. If you should find from the evidence that Rice was induced to buy this land by the fraudulent representations of Scofield as to its qualities as a farm and timber lot; if you nevertheless believe that he had a full opportunity to examine the land for himself, and such examination would have shown him the real character of the land, and of the timber upon it, and he omitted to avail himself of it, he cannot set up the fraud here as a defence, unless by some practice or contrivance of Scofield he was dissuaded from making such examination, [but even if he had no opportunity for examination before he bought, if you believe that he knew its real character, for soil, surface and timber very soon after he purchased, and was on the land once or twice a year thereafter, and did not make known the fraud or complain of it to Scofield, for five or six years after such knowledge, he cannot now set it up as defence and the plaintiff is entitled to recover

[Rice *v.* Olin.]

the amount secured by the mortgage, deducting the payments actually made thereon.] If Rice did not know the real character of the land as to soil, timber and surface, and you believe he bought on that inducement alone and that he was deceived by Scofield, he can deduct from the purchase-money the difference between what he agreed to give and what it was then actually worth, and in our opinion no more, for if he could exceed that measure of damages a vendee of land might get a man's land for nothing, by showing that had the land been as represented it would have been worth enough more than its actual value to wipe out all the purchase-money, and thus give the vendee the land for nothing, and this we think cannot be done in any case in which the purchase-money of land is involved."

The plaintiff's points and answers are as follows :—

1. This action is one wholly *in rem* against the land, and Traut and Wadsworth, the purchasers at sheriff's sale, who are admitted to defend, cannot set up as a defence any fraudulent representations made by Scofield to Rice in 1866 as to the quality of the land or the timber upon it.

Answer : " We think this is correct, but as Rice is still a party and may be liable on a bond, if one exists, we think any defence in Rice may be set up here."

3. Where a purchaser has the opportunity to inspect the property, as did Dan Rice in this case, it is his own fault if he did not inspect, and representations of the vendor without warranty, when there is an opportunity to inspect, form no defence to the payment of the purchase-money.

Answer : " This is correct; the law does not protect men against their own follies; against them they must protect themselves."

5. In this case it was the duty of Dan Rice to have offered to rescind the contract as soon as the fraud (if any there was) was known to him ; the delay has been such that the defence offered cannot now be made available.

Answer : " We answer this in the affirmative. And if you believe that Rice knew the real character of this land soon after he bought it, and never having offered to return it and made no complaint of the alleged fraud during all the time between this discovery and the bringing of this suit, he cannot now set up the alleged fraud as a defence to this suit."

6. What is a reasonable time or undue delay is for the court, and in this case the delay to take advantage of any representations made by Scofield is unreasonable, and the evidence of Heibeck as to such representations in 1866 must be disregarded by the jury.

Answer : " Affirmed ; referring to answer to 5th point, except as to Heibeck's testimony."

The defendant's points and answers were :—

[Rice *v*. Olin.]

1. If the jury believe from the evidence that while Rice and Scofield were negotiating for the sale of the land, Rice stated to Scofield that he was intending to build considerably and wanted to buy a timber lot that had plenty of whitewood, ash and hemlock, and Scofield represented to him that there was a large quantity of the kind of timber he had mentioned, and that the land was of good quality, was good for wheat, level and smooth, and on the faith of these representations, Rice purchased the land and paid the price stipulated, and the representations so made were untrue, it was such a fraud upon Rice as would entitle him to claim a deduction from the purchase-money equal to the difference in the value of the land at the time of the purchase and what it would have been worth if it had been in quality and description what it was represented to be by Scofield.

Answer : "The stating part of the point is affirmed if Rice had no reasonable opportunity to examine the land for himself; but we refuse to charge as requested as to measure of damages, and for that refer you to our general charge."

3. If the jury believe from the evidence that the price paid by Rice to Scofield for the land was more than twice its actual value at the time of the sale, that circumstance of itself is evidence of fraud.

Answer : " We cannot so charge, unless Rice had no chance to examine for himself."

4. If the jury believe from the evidence that the defendant was induced to pay much more than the mortgaged premises were worth, in consequence of the false representations of Scofield as to the timber and the quality of the land, and that he has already paid to the plaintiff all the property was fairly worth at the time of the purchase, the defendant is entitled to relief and the plaintiff cannot recover.

Answer : " We decline so to charge, but refer you to what we have said in our general charge as to the opportunity to examine and failure to complain of fraud within a reasonable time after knowledge of it."

5. If the jury believe from the evidence that at the time of the sale of the land to Rice there was a false representation of material facts by Scofield that induced Rice to purchase the land, it was a fraud upon Rice, and was not susceptible of confirmation by declarations of Rice or otherwise, without a new consideration.

Answer : " We decline so to charge, but refer to general charge."

The verdict was for the plaintiff for $2768.78. ·

The defendants took a writ of error; they assigned for error:—

1–3. The parts of the charge in brackets.

4–7. The answer to the plaintiff's points.

8–11. The answers to defendant's points.

[Rice *v.* Olin.]

*Cutler & Hinds* for plaintiff in error.—An innocent vendee is not bound to tender the property to a fraudulent vendor before suing for the fraud: Gilbert *v.* Hoffman, 2 Watts 67; Sands *v.* Codwise, 4 Johns. R. 598. In cases of actual fraud it is not necessary to inform the fraudulent vendor as soon as the vendee discovers the fraud: Kalbach *v.* Fisher, 1 Rawle 324. A terre-tenant owning the equity of redemption may defend against the mortgage on the ground of fraud on the mortgagor: Ulrick *v.* Voneida, 1 Paige 250; Brown *v.* Scott, 1 P. F. Smith 357; Schnepf's Appeal, 11 Wright 37. The defrauded party may either rescind or affirm the contract so far as executed and claim compensation for the fraud: White *v.* Leaven, 28 Barb. 235; Harris *v.* Rowen, 3 Wash. C. C. 359; Whitney *v.* Allaire, 4 Denio 554. As to damages, they cited Pennock *v.* Tilford, 5 Harris 456; Davidson *v.* Little, 10 Harris 250. A contract actually fraudulent cannot be confirmed: Duncan *v.* McCulloch, 4 S. & R. 483; Stuart *v.* Blum, 4 Casey 225; Miller's Appeal, 6 Casey 478; Jackson *v.* Summerville, 1 Harris 359; McKee *v.* Gilchrist, 3 Watts 230.

*S. E. Woodruff* (with whom were *D. W. Hutchinson* and *T. S. Woodruff*).—The defendant should have tendered back the land before bringing suit: Pearsoll *v.* Chapin, 8 Wright 11; Negley *v.* Lindsay, 17 P. F. Smith 218; Hersey *v.* Turbett, 3 Casey 424; Leaming *v.* Wise, 23 P. F. Smith 173. Where the vendee has an opportunity to inspect, the representations of the vendor will not constitute fraud; Whitaker *v.* Eastwick, 25 P. F. Smith 229; Borrekins *v.* Bevan, 3 Rawle 23; Wetherill *v.* Neilson, 8 Harris 448; Fraley *v.* Bispham, 10 Barr 320; Jennings *v.* Gratz, 3 Rawle 168.

Mr. Justice PAXSON delivered the opinion of the court, November 15th 1875.

The portion of the charge referred to in the first specification of error was but an expression of opinion upon the facts. It was not a binding instruction, and does not amount to error: Sailor *v.* Hertzogg, 10 Barr 296; Ditmars *v.* The Commonwealth, 11 Wright 335.

But there was error in that portion of the charge embraced in the second specification, and also in the answer to the plaintiff's fifth point. It was competent for Rice to have rescinded the contract when he discovered the alleged fraud. That he was not bound to rescind, and could defend against the payment of the balance of the purchase-money, at least to the extent of the injury sustained, is settled by numerous decisions: Fisher *v.* Worrall, 5 W. & S. 478; Good *v.* Good, 3 Id. 472; Hessner *v.* Helm, 8 S. & R. 178. It is true, the learned judge says in another part of his general charge: "If Rice did not know the real character of

[Rice v. Olin.]

the land as to soil, timber, and surface, and you believe he bought on that inducement alone, and that he was deceived by Scofield, he can deduct from the purchase-money the difference between what he agreed to give and what it was then actually worth." If the answer to the fifth point had been obscure or equivocal, the paragraph just cited might have cured such defect. But when the answer to a point is palpably wrong, it cannot be aided by the general charge.

It was also error to instruct the jury as contained in the third specification of error, that "even if he (Rice) had no opportunity for examination before he bought, if you believe that he knew its real character for soil, surface and timber, very soon after he purchased, and was on the land once or twice a year thereafter, and did not make known the fraud or complain of it to Scofield for five or six years after such knowledge, he cannot now set it up as a defence, and the plaintiff is entitled to recover the amount secured by the mortgage, deducting the payments actually made thereon." If the facts be as above stated, they would have been very persuasive reasons for the jury to have found, either that no fraud had been perpetrated, or that it had been waived by the defendant, Rice. It was error for the court to rule it as a question of law.

The answer to the plaintiff's first point is not clear. It is first affirmed and then qualified with the remark : " but as Rice is still a party, and may be liable on a bond, if one exists, we think any defence in Rice may be set up here." As the practical effect of this ruling was to allow the jury to pass upon Rice's defence, we do not regard the first portion of the answer as material. Nor do we think it necessary in this case to decide how far the purchasers at the sheriff's sale, who are the terre-tenants, and who have been admitted to defend, can attack the consideration of the mortgage. Rice, the mortgagor, is a defendant, and is upon the record.

The attempt of Ball, the assignee in bankruptcy of Rice, to withdraw Rice's appearance, amounts to nothing. He had no authority for any such action, nor any right to interfere with Rice in his defence to the mortgage. That the latter was entitled to take this defence, cannot seriously be questioned ; the exigencies of the case do not require us to go further.

The plaintiff's third point should not have been affirmed. It assumes that Rice inspected the property, which was one of the questions of fact to be submitted to the jury. Nor does the case rest upon the question of warranty. The complaint is of a fraudulent representation of the character of the property, extent of the timber, &c.

We think the court below indicated the correct rule for the measure of the damages. The remaining assignments of error are sufficiently covered by what has already been said.

Judgment reversed and a *venire facias de novo* awarded.