HENRY L. WILLIAMS *vs.* JOHN BELTZ and FRANCIS E. McGILLICK.

   1.  CORPORATIONS—SALE OF STOCK—WHAT LAW GOVERNS.
   An action to recover damages for alleged fraudulent misrepresentations by defendant with respect to sale of stock in a mining company, where the sale and the circumstances of the sale occurred in Pennsylvania, was governed by the law of that state in so far as applicable to the facts in the case.

   2.  CORPORATIONS—SALE OF STOCK—FRAUDULENT REPRESENTATIONS—
       VALUE OF MINING STOCK.
   A representation by defendant, on the sale of stock in a mining company, that its liabilities then amounted to $1,600, and a failure to disclose the existence of defendant's contract with the company, capitalized at $25,000, whereby he was to receive $36,000 out of the company's net profits in payment of money previously spent by him in its development, was a misrepresentation of a fact affecting the value of its stock.

   On Motion for New Trial and Arrest of Judgment.

   3.  CORPORATIONS—SALE OF STOCK—MEASURE OF DAMAGES.
   The measure of damages for a false representation of a material fact affecting the value of mining stock is the difference between the real value of the stock at the time of the purchase and what the purchaser was induced to pay by reason of the misrepresentation.

                        (*June* 4, 1917.)

JUDGES RICE and HEISEL, sitting.

*Daniel O. Hastings*, of Wilmington, and *James Ralph*, of Philadelphia, Pa., for plaintiff.

Statement.

*Edward G. Bradford, Jr.,* of Wilmington, and *Thomas Watson,* of Pittsburgh, Pa., for defendants.

Superior Court, New Castle County, May Term, 1917.

FOREIGN ATTACHMENT, No. 29, September Term, 1916.

Action of deceit, begun by foreign attachment, by Henry L. Williams against John Beltz and Francis E. McGillick. Directed verdict for defendants. Motion for new trial and in arrest of judgment denied.

The plaintiff seeks to recover damages from the defendants, for alleged fraudulent misrepresentation by the defendants with respect to the sale of stock in a mining company to the plaintiff.

The plaintiff claims that John Beltz, one of the defendants, owned the mining interests in, and was engaged in the development of, a lead mine in Galena, Illinois; that Beltz was in need of money for developing the mine and made arrangements with one Garrison, in Pittsburgh, Pennsylvania, to secure for him the necessary money. The plaintiff in October, 1912, through Garrison, became interested, with the idea of investing money in the venture. The plaintiff went to Galena with Beltz to inspect the mine; while on the trip he made inquiries of Beltz about the liabilities of the mining company, which had been organized, and he was at the time informed by Beltz that the company's liabilities amounted to about sixteen hundred dollars. The plaintiff in April, 1913, invested one thousand dollars in the company, for which he received twenty shares of the company's stock. The capital stock of the company amounted to ten thousand dollars. It was increased to twenty-five thousand dollars in September following, and at that time the plaintiff invested an additional thousand dollars, and a thousand dollars more in November, for which he received forty more shares of stock in the company. A little in excess of twenty-four thousand dollars worth of the stock was sold and the plaintiff owned approximately one-eighth of the stock of the company. In the latter part of November, 1913, the plaintiff first learned of the existence of a contract between Beltz, who was a director in the company, and certain other directors and stockholders under the terms of which Beltz was to receive

Opinion.

fifty per cent. of the net profits of the company until the sum of thirty-six thousand, which he had previously expended in the development of the mine, had been paid to him. Beltz in November, 1914, brought suit in the Pennsylvania courts against Samuel Garrison, F. E. McGillick (one of the defendants herein), George H. Futch, J. E. McGinnis, and William I. N. Lofland for the enforcement of the contract. The Pennsylvania courts held the contract to be binding and enforceable against the company, and Beltz was paid the thirty-six thousand dollars, which was to be paid to him, under the terms of the contract, out of the net profits of the company. The plaintiff further claims that by reason of the payment of the thirty-six thousand dollars to Beltz the shares of stock held by the plaintiff in the company have greatly decreased in value.

The defendants deny that they were guilty of any fraudulent misrepresentation whatever with respect to the sale of stock to the plaintiff and contend that the issues in the present case were determined in the former suit in the Pennsylvania courts, in which suit Henry L. Williams the plaintiff in the present action upon his own petition was made one of the defendants. The defendants further contend that the plaintiff did not suffer damages for the reason that the company paid dividends to Williams to the extent of three hundred and sixty-five per cent. on his investment.

The plaintiff at the trial introduced evidence to show the alleged fraudulent misrepresentation, and the circumstances surrounding it; the amount of capital stock issued by the company and the proportionate share owned by Williams; the terms of the contract and the decree of the courts of Pennsylvania with respect to it and the payment by the company of the thirty-six thousand dollars to Beltz under the terms of the contract.

RICE, J., after stating the facts as above, delivered the opinion of the court;

[1] The seventeenth prayer of the defendants is in the following language:

"That under all the evidence in this case it is the duty of the court to direct the jury to find a verdict for the defendants."

As a preliminary statement, we will say that it is admitted by counsel for the plaintiff and defendants that, as the alleged fraudulent concealment of the liabilities of the company, the sale of the stock and the circumstances surrounding the same, took place in the State of Pennsylvania, the law of that state in so far as the same may be applicable to the facts in this case, should control this court in the consideration and determination of the questions of law here raised.

With respect to the defendant Francis E. McGillick, we now say that there is no evidence in the case to support the plaintiff's allegation of fraud against McGillick, and therefore, it is our duty to direct the jury to find a verdict for the defendant McGillick.

Counsel for the defendants contend that the court should direct the jury to find a verdict for the defendant John Beltz, for the reason that the rule of the Pennsylvania courts with respect to damages in an action of deceit for fraud, in the sale of stock in corporations, is the difference between what the plaintiff paid for the stock and its actual value at the time it was purchased and that there is no evidence in this case to show that at the time of the purchase the value of the stock was any less by reason of the alleged misrepresentation than the plaintiff paid for it. In support of this contention he cites the recent case of *Curtis v. Buzard*, 254 *Pa.* 61, 98 *Atl.* 777. The plaintiff on the other hand argues that the court should not give binding instructions in favor of the defendant Beltz, for the reasons assigned by the defendant, and contends that in this case the plaintiff is entitled to such damages as were the natural and necessary result of the false misrepresentation, the measure being the amount the plaintiff would have received of the thirty-six thousand dollars, which the company paid to John Beltz, the defendant, on that part of plaintiff's stock purchased before the alleged fraud was discovered.

In support of his contention, counsel for the plaintiff cited the following cases, many of the cases being Pennsylvania ones: *Smith on the Law of Fraud*, § 289; 20 *Cyc. pp.* 136, 140; *Sutherland on Damages*, § 1171; *Pennock v. Tilford*, 17 *Pa.* 456; *Thompson v. Burgey*, 36 *Pa.* 403; *Stetson v. Croskey*, 52 *Pa.* 230; *Seigworth v. Leffel*, 76 *Pa.* 476; *Rice v. Olin*, 79 *Pa.* 391; *Guffey v.*

*Clever*, 146 *Pa.* 548, 23 *Atl.* 161; *High v. Berret*, 148 *Pa.* 261, 23 *Atl.* 1004; *Lukens v. Aiken*, 174 *Pa.* 152, 34 *Atl.* 575; *Weaver v. Cone*, 174 *Pa.* 104, 34 *Atl.* 551; *Drenning & Long v. Wesley*, 189 *Pa.* 160, 42 *Atl.* 13; *West Homestead v. Erbeck*, 239 *Pa.* 192, 86 *Atl.* 773; *Curtis v. Buzard*, 254 *Pa.* 61, 98 *Atl.* 777; *Medbury v. Watson*, 6 *Metc.* (*Mass.*) 246, 39 *Am. Dec.* 726; *Morse v. Hutchins*, 102 *Mass.* 439; *Thomson v. Pentecost*, 210 *Mass.* 223, 96 *N. E.* 335; *Whitney v. Allaire*, 1 *N. Y.* 305; *Benedict v. Trust Co.*, 91 *App. Div.* 103–107, 86 *N. Y. Supp.* 370; *Murray v. Jennings*, 42 *Conn.* 9, 19 *Am. Rep.* 527; *Gustafson v. Rustemeyer*, 70 *Conn.* 125, 39 *Atl.* 104, 39 *L. R. A.* 644, 66 *Am. St. Rep.* 92; *Shanks v. Whitney*, 66 *Vt.* 405, 29 *Atl.* 367; *Nysewander v. Lowman*, 124 *Ind.* 584, 24 *N. E.* 355; *Chapman v. Bible*, 171 *Mich.* 663, 137 *N. W.* 533, 43 *L. R. A.* (*N. S.*) 373; *Kendrick v. Ryus*, 225 *Mo.* 150, 123 *S. W.* 937, 135 *Am. St. Rep.* 585; *Drake v. Holbrook* (*Ky.*) 66 *S. W.* 512.

It appears from an examination of these cases that the courts of Pennsylvania, as well as many other courts, recognize the rule of damages in actions of deceit for fraudulent misrepresentations affecting the value of the property whether real or personal, to be the difference between the price paid and what the value would have been if it had been as represented.

[2] Before considering the question whether either rule, and, if so, which one, should obtain in this case, it is necessary for us to first determine whether the alleged fraudulent misrepresentation on the part of the defendant was one affecting the value of the stock purchased, or whether it was of such a nature that it would not affect the value of the stock purchased. If it was of the class which would affect the value of the stock purchased, then one of the rules of damages recognized by the Supreme Court of Pennsylvania should obtain; if it should prove to be of the other class, then neither rule would apply and in the absence of Pennsylvania decisions, it would be necessary for us under such circumstances to ascertain the true measure of damages.

The misrepresentation alleged was the failure of the defendant Beltz, when the plaintiff inquired about the liabilities of the company, to disclose to the plaintiff the existence of a contract Beltz had with the company whereby he, Beltz, was to receive

from the company the sum of thirty-six thousand dollars, to be paid out of the net profits of the company. While those interested in the company, and those who later became interested, undoubtedly had great expectations of profits, it is admitted by all that for more than a year there were no profits. At the time the plaintiff made his first investment the authorized stock of the company amounted to ten thousand dollars. The amount of stock was increased from time to time until it reached the sum of twenty-five thousand dollars, and as the increases of stock were made, the plaintiff purchased additional stock until he had purchased three thousand dollars worth of stock before he knew of the existence of the outstanding contract of the company with Beltz.

The existence of a contract for the payment of thirty-six thousand dollars out of the net profits of a company with authorized stock to the amount of ten thousand dollars, or even twenty-five thousand dollars, is surely a matter for a person contemplating the purchase of stock in the company, to consider before investing in the company notwithstanding the profits were of a purely speculative character. It is such a matter as would probably make the stock worth less than if the contract had not existed. We therefore are of the opinion that the alleged misrepresentation was of a fact affecting the value of stock of the company.

The plaintiff has not introduced evidence to show that the value of the stock was at the time of purchase or at any time thereafter affected by reason of the alleged misrepresentation. However he claims that he would not have invested in the stock of the company if he had had knowledge of the contract Beltz had with the company. While this may be true, yet the fact remains that the alleged misrepresentation was one in our opinion, within the class of those affecting the value of the stock, therefore he is bound by the decision of the Pennsylvania courts with respect to the measure of damages in such cases.

As in our opinion the alleged misrepresentation comes within the class of cases affecting the value of the property purchased, we will now consider whether the plaintiff suffered pecuniary loss or damage under the rules enforced in the Pennsylvania courts, with respect to the measure of damages in such cases.

In the case of *Curtis v. Buzard, supra,* the court below in considering the measure of damages in actions of deceit for fraud in the sale of stock used the following language:

"We are still of the opinion that the true rule as to the measure of damages in an action of deceit for fraud in the sale of stock is  *  *  *  the difference between what the plaintiff was induced to pay for the stock and its actual value at the time of the purchase."

This decision was affirmed by the Supreme Court of Pennsylvania.

If this is the rule of the measure of damages in such cases in the Courts of Pennsylvania, and we should adopt the rule here, it would be decisive in this case and it would be our duty to instruct the jury to find a verdict for the defendant.

However, without passing upon the question as to the applicability of this rule in the present case, we will pass to a consideration of whether the other rule of the measure of damages in actions of deceit for fraudulent misrepresentations, recognized by the Pennsylvania court, in connection with the facts of this case and determine whether under that measure of damages the plaintiff here is entitled to damages.

The measure of damages in such cases under this rule is the difference between the purchase price of the property and its value if it had been as represented.

This brings us to the question of what under the evidence in this case would have been the value of the stock if it had been as represented.  The evidence is: That the plaintiff up to the time he learned of the existence of the contract of Beltz, had purchased sixty shares of stock at its par value of fifty dollars per share. That some time thereafter Beltz brought suit against the company to collect the thirty-six thousand dollars due him, out of the profits of the company under the terms of his contract, and secured judgment.  This judgment was paid by the company. The payment of this sum of money to Beltz might well have made the stock of less value at the time, and if the value of the stock had been decreased by reason of Beltz being paid the thirty-six thousand dollars, then under the measure of damages in the rule under consideration, the plaintiff would have been entitled to

damages to the extent of any depreciation in value by reason thereof, if there has been a fraudulent misrepresentation as charged. But there is no evidence before us to show by reason of the payment of the money by the company to Beltz, that the stock of the company was depreciated in value, at that or any other time.

Thus whether we apply to the facts of this case the rule of the Supreme Court of Pennsylvania with respect to the measure of damages in actions of deceit in the sale of stock or the other rule recognized by that court with respect to actions of deceit for fraud in the sale of other property, the plaintiff is not entitled to damages in this case for the reason that there is no evidence to show that he suffered pecuniary loss by reason of the alleged fraudulent misrepresentation.

For the reasons assigned we are of the opinion that it is our duty to instruct the jury to find a verdict for the defendants, and we so instruct them.

                              Verdict for defendants.

Thereupon the plaintiff made a motion for a new trial and arrest of judgment.

RICE, J., delivering the opinion of the court:

In support of the motion for a new trial, counsel for the plaintiff made an oral argument and briefs in support of their contentions were filed respectively by counsel for plaintiff and defendant.

At the trial the court gave binding instructions to the jury to find in favor of the defendant, for the reason that it had not been proved that the plaintiff had suffered pecuniary loss as a natural and probable result of the defendant's alleged misrepresentation. And the court held at the time, whether the measure of damages which should obtain in this case, was the difference between what the plaintiff was induced to pay for his stock and its actual value at the time of purchase, or was the difference between what he was induced to pay and what the stock would have been worth if it had been as represented, the evidence did not show that the plaintiff had suffered pecuniary damages.

[3] After a further consideration of the facts of the case, the court are of the opinion that we probably were in error in

some of the reasons given by us in holding that under the second measure of damages the plaintiff had not suffered pecuniary loss. However, we are now of the opinion that the true and reasonable measure of damages in the present case is that laid down by the Supreme Court of Pennsylvania in the two cases of *High v. Berrett*, 148 *Pa.* 263, 23 *Atl.* 1004, and *Curtis v. Buzard*, 254 *Pa.* 61, 98 *Atl.* 777, to be the difference between the real value of the stock at the time of purchase and what he was induced to pay by reason of the false misrepresentation. This appears to be the measure of damages recognized by the Supreme Court of the United States in the case of *Smith v. Bolles*, 132 *U. S.* 125, 10 *Sup. Ct.* 39, 33 L. Ed. 279, and also by the English courts in the case of *Peek v. Derry*, 37 *Law Reps.*, *Chancery Division*, 541.

The motion for a new trial is denied.