Tyson, Respondent, vs. Ranney, Appellant.

*December 17, 1894 — March 5, 1895.*

*Husband and wife: Agency: Purchase of land: Deceit: Parties.*

1. After a husband had made an agreement to trade his own property for certain lands, he arranged with his wife that she should take the lands in exchange for certain moneys which he owed her and other moneys belonging to her, and at his request the lands were conveyed directly to her in consummation of the first-mentioned agreement. *Held*, that the conveyance did not carry with it, as appurtenant to the lands, a cause of action for the deceit of the grantor by which the agreement to trade was induced.

2. The fact that at the time of making the agreement to trade the husband had an intention (not yet disclosed to his wife) to have the lands conveyed to her and to take her money instead, and the fact that there had been previous negotiations with the grantor looking to the investment of her money in other similar lands, did not render the husband, in the making of the agreement to trade, an agent for the wife.

Tyson vs. Ranney.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

The plaintiff is a married woman, the wife of one Mark Tyson. Mark Tyson was a member of a partnership under the style, Tyson, Conrad & Co. Tyson, Conrad & Co., by an agreement in writing, sold their business and plant, a sash and door factory, to another firm, consisting of the defendant *Ranney*, John S. George, and Thomas Shea. They were to be paid for their business and plant by the conveyance of certain pine lands in Minnesota, and by certain stock in the new enterprise. The lands to be conveyed to Tyson, Conrad & Co. were apportioned among the partners by agreement, so that each partner was to receive conveyance of his portion in severalty. About one week after this trade had been agreed upon and arranged, but before any conveyance of the pine lands had been made, Mark Tyson informed his wife of the trade. This was her first information of it. It was arranged between Mark Tyson and his wife that the conveyance of his portion of the pine lands should be made directly to her by *Ranney*, who was the owner of them, and it was so done. It was claimed that Tyson was indebted to his wife for moneys belonging to her which he had had and used, and that this conveyance of the lands to her was designed as a payment or reimbursement to her of such moneys. Now it is claimed that *Ranney*, to induce the trade, had made representations to Mark Tyson of the character and value of the lands, and of the amount and value of the pine timber upon them, which were false in fact and made with intent to deceive; that in fact the lands and timber were very different in character and of very much less value than they would have been if they had been as represented. So the plaintiff, *Mrs. Tyson*, brought this action to recover damages for this deceit. She had verdict and judgment, from which this appeal is taken.

For the appellant there was a brief signed by *Quarles*,

*Spence & Quarles,* of counsel, and oral argument by *J. V. Quarles.*

For the respondent there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *J. G. Flanders.*

The following opinion was filed January 8, 1895:

NEWMAN, J.   The decisive question in this case is whether the evidence shows that the plaintiff owns the cause of action on which the suit is founded.   This depends on the other question whether, in buying those lands, Mark Tyson was acting for his wife, or whether he was acting for himself.   Apparently he was acting for himself.   He owned the property which he traded for the pine lands.   He took the pine lands in exchange for his own property.   He negotiated the trade for himself, without consultation with his wife and without her knowledge.   He signed the written agreement by which the trade was made.   He, not his wife, owned the right, secured by the contract, to have the lands conveyed.   He, if any person, was damaged by the deceit of *Ranney* in misrepresenting the character and value of the lands.   It was after this damage, if any, had accrued to Mark Tyson, that he informed his wife of the trade and proposed to have the lands conveyed to her.   There is no question of his right to have the lands conveyed to her.   The question is whether the conveyance of the lands to her carried with the lands, as an incident, this cause of action which had accrued to Mark Tyson for the deceit, for there is no pretense of any other transfer.   Evidently, the conveyance did not carry with it this cause of action.   This cause of action is in no manner accessory to the title to the lands, but is entirely independent of it.   The conveyance carried the title to the lands alone.   It did not draw after it this cause of action, as an accessory or appurtenance.   For nothing passes by implication, or as incident or appurtenant to the lands granted, ex-

cept such rights, privileges, and easements as are directly necessary to the proper enjoyment of the granted estate. *Ogden v. Jennings,* 62 N. Y. 526, 531; *Woodhull v. Rosenthal,* 61 N. Y. 382, 390; *Ottumwa W. M. Co. v. Hawley,* 44 Iowa, 57. The effect of the transaction, in this regard, is no different from what it would have been if *Ranney* had conveyed directly to Tyson, and Tyson had conveyed to his wife. It follows that it was error to submit the question of the agency of Mark Tyson for his wife, in the transaction, to the jury. There was no evidence which tended to show that he acted as her agent.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

A motion for a rehearing was denied March 5, 1895, and the following opinion was filed April 3, 1895:

NEWMAN, J. It is urged on this motion that the decision is wrong in the inference of fact which it makes from the evidence. It is claimed that no inference from the evidence other than that Tyson was acting as agent of his wife in the transaction is warranted. The evidential facts are practically undisputed and are plain. It is considered that the proper inferences to be drawn from such facts are also plain.

Perhaps the facts can be made more clear by a simple narration of them. They are that the firm of Tyson, Conrad & Co. owned a sash and door factory and business in Milwaukee. They traded the factory and business with *Ranney* and his associates for pine lands owned by *Ranney* in Minnesota. The bargain was made in writing. Tyson, Conrad & Co. agreed to sell the factory and business to *Ranney* and his associates, and to receive in payment certain designated pine lands. By the written contract they agreed upon a division of the pine lands among the partners. Certain lands were designated to be conveyed to Tyson for his share

or interest in the factory and business. So far, at least, it appears quite plainly that Tyson was looking after and transacting his own business and not his wife's business. But, at the time when Tyson made this trade with *Ranney*, *Mrs. Tyson* had money in the bank, and Tyson owed her some, which she intended to invest in pine lands. There had been negotiations with *Ranney* looking to its investment in lands which he owned. These were not, however, the same lands for which Tyson traded. At the time of his trade with *Ranney*, Tyson had an undisclosed intention to have the lands coming to him in the trade conveyed to his wife, and himself to take her money instead. This purpose he afterwards disclosed to his wife, and received her assent. This was after the trade had been fully agreed upon, but before conveyances were made. At Tyson's request, *Ranney* conveyed directly to *Mrs. Tyson*, and Tyson took her money.

It is from these facts that the inference which is to determine the case is to be drawn. Was this trade with *Ranney* Tyson's transaction, or was it *Mrs. Tyson's?* Was Tyson acting for himself, or was he acting for his wife? No doubt the more obvious and natural interpretation of these facts is the one which should be preferred. No specious or strained interpretation, to favor some desired ulterior result, is permissible. The more obvious and natural interpretation of this transaction certainly is that Tyson was acting for himself and that it was his transaction. That he intended to exchange the pine lands for his wife's money has no significance. She was never in a situation to enforce specific performance of the contract between *Ranney* and Tyson. Whatever cause of action might have arisen out of that contract was Tyson's cause of action. If the trade was induced by deceit, the remedy was Tyson's. While the contract was executory, probably he had an election of remedies. He could rescind for the fraud, or have his action for his damages. But the election was his. It was a right in gross, so

to speak, and was not appurtenant to the lands. It did not pass by their conveyance to *Mrs. Tyson.* The decision was right.

