REYNOLDS CLOUGH,

*vs.*

WILLIAM F. COOK.

*Kent, July* 3, 1913.

Fraud can generally be taken advantage of only by the person de ceived.

Misrepresentation, to be a defense to a suit for specific performance of an agreement to renew a lease, must have been relied on; and hence that defense cannot be set up by one who with knowledge of the mis-representations purchased the property from the person deceived.

Aid in enforcing one's legal rights will be withheld, if it would be unfair to help him; but specific performance of a lease, renewable from year to year perpetually at the option of the lessee, at a rent claimed to be merely nominal, will not be refused the lessee, where the defendant bought the property with full knowledge of the existence of the lease, and at a reduced price because of the lease.

A court of chancery has jurisdiction to decree specific performance of an agreement to renew a lease, though no express renewal may be necessary to entitle the lessee to continue in possession.

Under a lease giving the lessee option to renew it from year to year, he is entitled to have a decree of specific performance to renew the lease on the same terms, though it make the lease renewable perpetually from year to year.

A covenant to renew from year to year at the lessee's option in a lease of real estate is enforceable against a purchaser of the property with notice of the lease and the covenant to renew.

Where a court of equity has taken jurisdiction to decree specific performance of a covenant to renew a lease at the lessee's option, it is not prevented from granting such relief because the landlord has since started suit for possession before a justice of the peace, and the prosecution thereof may be perpetually enjoined.

The granting of a decree for complainant on a motion for a decree notwithstanding the answer is in the discretion of the Chancellor; but where the answer cannot be amended so as to present a good defense, and nothing is to be gained by prolonging the litigation, it will be granted.

BILL FOR SPECIFIC PERFORMANCE. The bill is for specific performance of an agreement contained in a lease for a renewal of it from year to year, and was heard on a motion under rule 29a for a decree notwithstanding the answer. It appeared from the bill that on April 12, 1912, one Graham became the owner of a building in Dover used for offices, and on April 13, 1912, made a written lease to the complainant, Clough, of all the offices on the first floor of the building for the remainder of the calendar year 1912 at a rental of $200 per annum, with the privilege of using one of the outside walls for advertising. The demise was renewable from year to year at the option of the lessee, and it was provided that any holding over after the expiration of a term should be a sufficient exercise of such option without any other notice. It was the duty of the lessor to heat the offices, the light thereof being furnished by the lessee. This lease was promptly recorded and the lessor occupied the offices. By deed dated August 20, 1912, Graham conveyed the office building to Cook, the defendant, and Cook continued to furnish the heat for the complainant's office and accepted rent to the end of the year 1912. During September, 1912, the defendant served on the complainant a notice to quit the premises on January 1, 1913. Thereupon the complainant, on December 31, 1912, tendered the defendant for execution by the latter a new lease executed by the former for the year 1913, it being identical with the first lease in all material points, but the defendant refused to sign the new lease. On January 1, 1913, the original bill was filed asking that the defendant be required to execute the new lease, and service of the subpoena was made on the same day. On January 6, 1913, the defendant, Cook, began an action against the complainant before a justice of the peace to recover possession of the demised premises from the complainant as a tenant holding over after notice to quit. Thereupon a supplemental bill was filed, setting forth the proceedings before the justice of the peace, and asking that the further prosecution thereof be restrained until the original cause had been decided. A restraining order was issued and a rule for a preliminary injunction awarded, and by agreement of counsel the restraining order has stood without hearing the rule.

By his answer, the defendant claimed that Graham, from whom he bought the building, was induced to make the lease "through misrepresentation and fraud, and in a manner dishonest, unconscionable, oppressive and contrary to good morals." In support of these allegations, it was averred that Clough induced Graham to buy the building, furnished the money for the purpose and agreed to take a lease of the offices on the first floor at a yearly rental of $300, until such time as Graham could sell the building at a profit, and that Graham made the lease to Clough, which was one for $200 yearly rental and renewable from year to year at the option of the lessee, without understanding the legal effect of it. The sum of $200 was alleged to be only a nominal rent. Shortly thereafter Graham represented to Clough that probably there was a purchaser for the building at a profit of $500, and finding the lease an obstacle to the sale, sought a cancellation of the lease; and because the lessee refused to do so was obliged to sell the building to Cook with a smaller profit.

It is distinctly admitted by Cook that at and before he purchased the building he had full knowledge of these transactions between Graham and Clough and of the lease.

*Henry Ridgely* and *William M. Hope*, for the complainant.

The allegations of fraud and misrepresentation in the transaction between Graham and Clough are not sustained by the facts set forth in the answer. Cook was certainly not injured by any fraud or misrepresentation of Clough towards Graham. Cook cannot take any advantage from such fraud, for he knew all the facts before he bought the building, and the fraud or misrepresentations were not towards him, but Graham. 2 *Pomeroy's Equity Jurisprudence*, (3d Ed.) § 899; 3 *Pomeroy's Equity Jurisprudence*, (3d Ed.) §1276; 20 *Cyc.* 80–84; *Tyson v. Ranney*, 89 *Wis.* 518, 61 *N. W.* 563, 62 *N. W.* 931; *Lawrence v. Montgomery*, 37 *Cal.* 183.

*Arley B. Magee* and *James M. Satterfield*, for the defendant.

The facts show that the contract between Graham and

Clough was unfair and inequitable, and as courts of equity in granting specific performance exercise a wise discretion and will deny the relief where it is unfair to the defendant to do so. *Godwin v. Collins*, 3 *Del. Ch.* 189. As evidence of the unfairness, the rent was nominal for a perpetual lease.

THE CHANCELLOR. As the case is heard on the motion for a decree in favor of the complainant notwithstanding the answer, which motion has the effect of a general demurrer, the allegations of the answer are admitted to be true, and so are the allegations of the bill not denied by the answer.

From the facts alleged to support the allegations of fraud and misrepresentation by Clough towards Graham, it is not at all clear that the charges are sustained. But assuming as true that the facts show such fraud and misrepresentation, Cook was not deceived or injured thereby, for he knew all the facts stated in his answer before buying the building, and according to the defendant's interpretation of the facts, bought at a smaller price by reason of the existence of the lease. In general, fraud can be taken advantage of only by the person deceived.

It is fundamental that a misrepresentation as to a fact, to be a defense to a suit for specific performance, must have been relied on by the person to whom it was made; and it necessarily follows that it cannot be used as a defense by one who bought the property with knowledge of the misrepresentations respecting it, and who could not, therefore, possibly have relied on the misrepresentations.

"The general rule that a misrepresentation must be relied upon by the party receiving it, in order that it may be sufficient ground for impeaching or defeating a contract, extends to the assignment of an agreement which, as between the original parties, is affected by a misrepresentation. If a contract between A. and B., voidable at the instance of B. on account of A.'s misrepresentations made to him in procuring it, is assigned by B. to a third person, C., who is in no such relations with the original parties that he is affected by the fraud, and to whom no false statements are made in obtaining the transfer, the agreement thus assigned, if otherwise binding upon him, would be valid against C.; at least its enforcement against him would not be hindered by A.'s original misrepresentations,

since he had not acted upon their faith and credit." 2 *Pomeroy's Equity Jurisprudence* (3d Ed.) 899;  See also *Tyson v. Ranney*, 89 *Wis.* 518, 61 *N. W.* 563, 62 *N. W.* 931; *Lawrence v. Montgomery*, 37 *Cal.* 183.

But is the lease so unfair in its terms as to be oppressive or unconscionable, so that a court of equity will not lend its aid to its enforcement?  It is discretionary in the court to withhold its aid to assist one in enforcing his legal rights if it be unfair to help him.  In such case the court simply keeps its hands off.  *Godwin v. Collins*, 3 *Del. Ch.* 189, 201.  The only possible elements of unfairness are the perpetual renewability of the lease and the amount of rent.  The lease is renewable perpetually at the option of the lessee, and is in fact worse than a perpetual lease, which would require the consent of the lessor for its termination, while the lease in question is terminable by the lessee only.  But such a lease is not necessarily so unfair as to shock the conscience of the Chancellor, even if Graham were objecting to an enforcement of it, and beyond question Cook's objection to it does not have weight because he knew all about the lease when he bought the demised premises.

It is alleged, however, that the rent was "nominal."  But that allegation requires facts to sustain it, and the facts do not so show, but rather the contrary.  No allegation is made as to what would be the fair rental value.  On the contrary, the allegations of the answer were that the original agreement between Graham and Clough was for $300 rent, while the lease calls for $200.  Such disparity does not make the present rent "nominal."  But assuming that $200 is only a nominal rent, the defendant bought with knowledge of that fact.  However viewed, there is no merit in equity in the contentions of the defendant.  If he made a bad bargain he did it with his eyes open, and it is not so bad a bargain as to shock the court's sense of fair play.

A court of chancery has jurisdiction to decree specific performance of an agreement to renew a lease.  2 *Story's Equity Jurisprudence*, § § 722, 729; 2 *Tiffany on Landlord & Tenant*, 1552, and cases cited; *Furnival v. Crew*, 3 *Atk.* 83, 87; *Matthes v. Wier*, *ante p.* 63, 84 *Atl.* 878.

It is probably correct to say that the complainant, by remaining in possession of the premises under the lease and the right to have a renewal of it, holds the term completely and does not need a decree for specific performance. In some cases it was held that a covenant to renew is in effect an agreement to extend the lease, and that no new lease is necessary. 2 *Tiffany on Landlord & Tenant, p.* 1516. But the reasoning as to the meaning of the word "renew," as distinguished from "extend," referred to in *Kollock v. Scribner*, 98 *Wis.* 104, 73 *N. W.* 777, seems more satisfactory and to justify the lessee in requiring a new lease. Still, however this may be, the right to specific performance of a covenant to renew is generally enforced by courts of equity.

In *Tritton v. Foote*, 2 *Bro. C. C.* 636, *s. c.*, 2 *Cox* 171, Lord Thurlow, Chancellor, decreed specific performance of a covenant in a lease to renew under the same covenants exclusive of the covenant of renewal. There is some question whether this is correct. See note to the above case in 29 *Eng. Rep. Reprint* 353. But however that may be, the lessee is necessarily entitled to have the same kind of a lease, even if it makes it perpetually renewable from year to year, for such was clearly so stated in legal effect in the lease. So also the contract will be enforced against a grantee of the lessor who took title with notice of the lease and its agreement for renewal. 3 *Pomeroy's Equity Jurisprudence,* §1405, *note* 2; *Haughwout v. Murphy*, 22 *N. J. Eq.* 531, 547. In the latter case the court said:

"If the vendor should again sell the estate of which, by reason of the first contract, he is only seized in trust, he will be considered as selling it for the benefit of the person for whom, by the first contract, he became trustee, and therefore liable to account. * * * Or the second purchaser, if he have notice at the time of the purchase of the previous contract, will be compelled to convey the property to the first purchaser."

It is unnecessary to determine in this case whether a court of equity can enjoin a landlord from proceeding before a justice of the peace against his tenant as a holding over tenant, to recover possession of the demised premises (a question raised but not decided, in *Marvel v. Ortlip*, 3 *Del. Ch.* 9); for the court

had taken jurisdiction of the cause before such a proceeding was taken by the defendant against the complainant, and will retain jurisdiction notwithstanding such proceeding to try the right of the complainant to possession under the lease. As the complainant, before that proceeding, was, under his bill theretofore filed, entitled to an equitable remedy of specific performance of an agreement for a lease, this court is not prevented from proceeding to grant such relief because the defendant, the landlord, has brought an action before the justice of the peace to obtain possession from the tenant and the tenant has a valid defense in that action.

While it is discretionary in the Chancellor to refuse a decree for the complainant on a motion such as was made in this case under the rule, and to allow the case to proceed, yet as the admissions in the defendant's answer are decisive and their effect cannot be changed by any amendment, there is nothing to be gained by a prolongation of the litigation, and a final decree will be entered now. The complainant may have a decree declaring that he is entitled to a renewal of the lease in question, according to the terms thereof, and requiring the defendant, Cook, to execute, acknowledge and deliver to the complainant the draft of a lease heretofore tendered by the complainant to the defendant, being Exhibit C attached to the original bill, or a similarly drafted lease; and also a decree perpetually restraining the defendant from further prosecuting the proceeding heretofore taken before the justice of the peace against the complainant as a holding over tenant. The costs of the cause will be taxed against the defendant.