HENRY L. WILLIAMS, plaintiff below, plaintiff in error, *vs.* JOHN BELTZ and FRANCIS E. McGILLICK, defendants below, defendants in error.

1. FRAUD—MISREPRESENTATIONS—QUESTION FOR JURY.

It was for the jury to determine whether representations by a seller of stock that the company had no indebtedness related to an indebtedness existing when the representations were made, or related to obligations or liabilities then existing, or to a liability contingent on future conditions; there being some evidence on the subject in the buyer's action for fraud.

2. FRAUD—DAMAGES—LAW GOVERNING—CONTRACT INDUCED BY FRAUD.

Where a contract for the sale and purchase of stock was made and performable in Pennsylvania, the law of Pennsylvania should be applied, if there is established in that state a settled rule as to the measure of damages from fraud in the sale of stock.

3. FRAUD—MISREPRESENTATIONS—DAMAGES—QUESTION FOR JURY.

In an action for fraud in the sale of corporate stock, defendants having represented the company had no outstanding obligations, the effect of the existence of a liability on the part of the company to a defendant on the value of the shares was for the jury to determine, in fixing damages under the applicable Pennsylvania rule that the difference between price and value was the measure.

4. FRAUD—MISREPRESENTATIONS.

In an action for fraud in the sale of corporate stock, the sellers having represented the company had no outstanding obligations, since the alleged misrepresentation was of a fact affecting the value of the stock, the jury could consider the subject-matter of the representations in fixing damages under the applicable Pennsylvania rule that the measure was the difference between price and value.

5. FRAUD—MISREPRESENTATIONS—RELIANCE.

The buyer of corporate stock under representations that the company had no outstanding obligations could not recover as for misrepresentations and fraud on account of the purchase of any shares after knowledge of the existence of a liability of the company.

6. LIMITATION OF ACTIONS—DISCOVERY OF FRAUD—SALE OF STOCK.

The statute of limitations on a cause of action for fraud and misrepresentations in the sale of stock does not begin to run until the fraud has been discovered by the buyer, or, perhaps, should have been discovered.

7. LIMITATION OF ACTIONS—TIME OF DISCOVERY OF FRAUD—QUESTION FOR JURY.

If there was a conflict of testimony on the question as to the time of plaintiff's discovery of defendant's fraud, or if it is urged that plaintiff by the exercise of reasonable diligence would have discovered the fraud earlier, such questions should have been left to the jury under proper instructions as to the application of the statute of limitations.

8.  FRAUD—MISREPRESENTATIONS—QUESTIONS FOR JURY.
    In an action for fraud and misrepresentations in the sale of corporate stock, where there was some evidence to support the allegation of deception, whether plaintiff was in fact deceived by the representations was for the jury.

(*June* 27, 1919.)

CURTIS, Chancellor, BOYCE and CONRAD, J. J., sitting.

*Daniel O. Hastings*, with him *James Balph*, of the Pennsylvania Bar, for the Plaintiff in Error.

*Edward G. Bradford, Jr.*, with him *Thomas Watson*, of the Pennsylvania Bar, for the Defendant in Error.

Supreme Court, No. 7, January Term, 1919.

WRIT OF ERROR TO SUPERIOR COURT, New Castle County.

Action by Henry L. Williams against John Beltz and another. To review a judgment for defendants, plaintiff brings error. Judgment set aside as to the named defendant, and new trial awarded as to him.

See same case below, 6 *Boyce* 554, 101 *Atl.* 905.

The action in assumpsit was begun by a foreign attachment, and the declaration alleged that the defendants knowing the plaintiff to be a prospective purchaser of shares of stock of the Great Western Lead Manufacturing Company, and to induce him to buy the stock falsely and fraudulently represented to him that the company had at that time no outstanding obligations other than a few small debts, whereas a certain contract then existed between the defendants on one side, and one Fritch and others for the company on the other side, wherein it was agreed that fifty per cent. of the net profits of the company should be applied to the repayment to the defendant John Beltz thirty-six thousand dollars previously expended by him for the company; that relying on the representation the plaintiff purchased from the corporation shares of its stock of par value of three thousand dollars; that afterwards Beltz in a suit on his contract with Fritch and others obtained a decree in a court in Pennsylvania directing that fifty per cent. of the net profits of the company be paid to the defendant Beltz, until the thirty-six thousand dollars was paid; that the money was paid by the company to

Beltz; and that by reason thereof the shares of stock held by the plaintiff had decreased in value.

Testimony was produced relating to the representations, the contract and the enforcement of payment of thirty-six thousand dollars with interest to Beltz, but none as to any change in value of the shares of stock of the company. It was shown that after the plaintiff became a stockholder the company was very success-ful, and within a period of eighteen months dividends were paid to stockholders aggregating three hundred and sixty-five per cent. of the par value of the stock.

At the conclusion of the testimony for the complainant a motion for a nonsuit was made by the defendant, and the court directed that the case proceed, reserving the question for hearing on a motion for binding instructions. Later, after both sides had closed, the court after argument directed a verdict for the de-fendant on the ground that there was no evidence to show that by reason of the payment to Beltz of the money due on the con-tract with the company the stock of the company had depreciated in value, and so no evidence that the plaintiff had suffered any pecuniary loss by reason of the representations of the defendant.

A writ of error was thereupon taken.

CURTIS, Chancellor, delivering the opinion of the Court:

The main question raised is whether the court below rightly instructed the jury to find a verdict for the defendant. Deceit was the basis of the action, and the deceit alleged was the with-holding from the plaintiff, as the prospective purchaser of shares of stock of a lead mining company, of information sought by him as to the financial standing of the company before becoming a purchaser thereof. In the court below, after both sides had concluded their testimony, the jury were instructed to find a verdict for the defendant.

The representations complained of were not as to the value of the stock, but as to the financial standing of the company. There was evidence that before the plaintiff bought any shares of stock, and in response to inquiries as to the indebtedness, or obligations, or abilities of the company, representations were

made to him by the defendant Beltz, as to certain debts then owed by the company, and that the existence of the contract between Beltz and the company was not then disclosed to the plaintiff, and was not known by the plaintiff until after he had bought stock of the par value of three thousand dollars. By this contract Beltz was to receive thirty-six thousand dollars, and was entitled to have fifty per cent. of the profits of the company until that sum was paid, and subsequently by action he recovered that sum from the company.

[1] It is unimportant whether the contract of the company with Beltz created an indebtedness of the former to the latter, or only a contingent interest in the future profits of the company. Assuming that the essential elements of a debt were lacking, still there was a liability to pay a sum from profits when and as earned, and subsequently this liability was established and enforced by an action at law. It was for the jury to determine whether the representations related to an indebtedness existing when the representations were made, or related to obligations or liabilities then existing, or related to a liability contingent on future conditions. There was some evidence on the subject, the weight and effect of which was for the jury to decide.

[2] Because the contract was made and performable in the state of Pennsylvania counsel for all parties agree that the law of that state should be applied if there be there established a settled rule as to the measure of damages in such cases. From the cases cited from that state it seems clear that the measure of the plaintiff's damages is the difference between the value of the shares purchased by him and the price paid for them by him. This was the rule applied in *High v. Berret*, 148 *Pa.* 261, 23 *Atl.* 1004, and substantially in *Curtis v. Buzard*, 254 *Pa.* 61, 98 *Atl.* 777.

In the former case (*High v. Berret*), the plaintiff was induced to buy shares of a new mining company organized to buy the property of another mining company, relying on false and fraudulent representations as to the success of the old company and the amount of ore in the mine. Later the new company failed, and the buyer brought an action for damages. On the question of

Opinion.

the measure of damages the appellate court said that the damages of the plaintiff should equal the loss which the deceit inflicted. Defining the loss specifically the court said:

"The loss in the transaction before us, is the difference between the real value of the stock at the time of the sale, and the fictitious value at which the buyer was induced to purchase."

The court said also that the damages was not based on actual loss plus anticipated speculative results, and approved the action of the court below in limiting the verdict to the difference between the value of the property which the stock represents and the price paid for the stock.

In the latter case (*Curtis v. Buzard*), which was an action of deceit based on misrepresentations as to the price which the defendant, the seller, had paid for the shares which he had sold to the plaintiff, the court said the damages was the difference between what the buyer was induced to pay for the shares and their actual value at the time of purchase. This is substantially the rule applied in the earlier case of *High v. Berret.*

In the other cases in the courts of Pennsylvania cited here, the representations were as to the physical condition of personal property sold, and in such cases the rule of damages would be different from that applicable when the representations were as to the financial condition of the company in cases of sale of shares of its stock. *Thompson v. Burgey*, 36 *Pa.* 403; *Stetson v. Croskey*, 52 *Pa.* 230; *Lukens v. Aiken*, 174 *Pa.* 152, 34 *Atl.* 575.

[3, 4]  The court below should have applied the rule of *High v. Berret*, viz. the difference in the value of the shares (i. e. of the property and assets of the company which the shares represented) at the time of the sale, and the price paid by the plaintiff for the stock. Instead thereof the court in effect said that the plaintiff could not recover because he had not shown that the stock had depreciated in value, and so had not proved a pecuniary loss resulting from representations of the defendant as to the financial standing of the company. There was some evidence in the case from which the jury could have found the difference between the value of the shares of stock at the time they were bought by

the plaintiff (which necessarily included a consideration of the pecuniary liabilities of the corporation, and especially its liability to Beltz) and the price paid by the plaintiff for the stock. The effect of the existence of this liability to Beltz on the value of the shares was for the jury to determine. As pointed out by the court below the alleged misrepresentation was of a fact affecting the value of the shares of stock, and it follows that the jury could rightly take into consideration subject matter of the representations.

[5] The point at issue is not whether by reason of the payment of the money by the company to Beltz the shares of stock had depreciated in value, the test applied by the court below, but whether and to what extent the existence of that liability to Beltz affected the value of the shares at the time the plaintiff purchased them. The difference between the value of the shares if and as so affected and the price paid by the plaintiff for the shares he bought is the measure of his damages. Therefore, the court below should not have directed a verdict for the defendant, but should have instructed them as to the rule of damages as herein indicated. It is obvious, of course, that the plaintiff could not recover damages as to the purchase of any shares of stock after knowledge of the existence of the liability of the company to Beltz.

[6, 7] The question as to the operation of the Statute of Limitations was also raised by a plea and argued in the brief of the defendant in error. The cause of action is one of deceit, a species of fraud, based on misrepresentations as to the indebtedness or liabilities of the company, the shares of which were bought by the plaintiff. In such cases at law and in equity the statute does not begin to run until the fraud has been discovered, or, perhaps, should have been discovered. This was established by the Supreme Court of this state in *Lieberman v. First National Bank*, 2 *Pennewill* 418, 45 *Atl.* 901, 48 *L. R. A.* 514, 82 *Am. St. Rep.* 414. In the case at bar the false representations were made prior to April first, 1913, and the action commenced June first, 1916. But there was testimony by the plaintiff that he did not know of the contract between the company and Beltz until Novem-

ber 22, 1913. If there was a conflict of testimony on the question as to the time of discovery of the fraud, or if it be urged that the plaintiff should, by the exercise of reasonable diligence, have discovered the fraud earlier, then both questions should have been left to the jury under proper instructions as to the application of the statute of limitations.

[8] It was argued for the defendant in error that the evidence showed that the plaintiff was not in fact deceived by the representations of the defendant. But this is clearly for the jury, there being some evidence to support the plaintiff's allegations of deception.

We agree with the finding of the court below that there is nothing in the record to support the allegations of fraud made against Francis E. McGillick, one of the defendants, and find no error in the direction to the jury to find a verdict for him.

The judgment entered below on the verdict should be set aside as to John Beltz, and the plaintiff below, plaintiff in error, awarded a new trial as to the defendant John Beltz.

NOTE.—By agreement of counsel, the case of Joseph E. McGinness, plaintiff in error, v. defendants above was tried with the case above, and the same judgment was entered.