OLE C. BRINGEN, APPELLANT, V. MAX WOLF ET AL., APPELLEES.

FILED JULY 15, 1921. No. 21595.

Fraud: REMEDIES: WAIVER. A person who has been induced by fraud to purchase property, when he discovers the fraud, may, at his election, rescind the contract and recover back all that he has parted with thereon, or, when the contract of sale has been executed, in whole or in part, before the discovery of the fraud, he may affirm the contract and maintain an action for his damages resulting from the antecedent fraud, or, when sued for the purchase price, he may plead said damages by way of recoupment. The question of waiver is a question of intention, and this right of action for deceit will not be held to have been waived unless the intention of its possessor to make such waiver clearly appears. Obtaining an extension of time and the renewal of a note given for the purchase price of said property is not a waiver of such right of action as a matter of law.

APPEAL from the district court for Boone county: FREDERICK W. BUTTON, JUDGE. *Reversed.*

*Albert & Wagner, J. S. Armstrong, and V. E. Garten,* for appellant.

*Williams & Williams, contra.*

Heard before LETTON, DAY and DEAN, JJ., CLEMENTS and MORNING, District Judges.

CLEMENTS (E. J.), District Judge.

This is an action for damages alleged to have been sustained by plaintiff in consequence of the sale of cattle, infected by a disease known as "pink-eye," to plaintiff by defendants, who, it is alleged, had knowledge of the condition of the cattle, but represented to the plaintiff that they were all right and sound. At the close of the evi-

dence, on motion of defendants, the court instructed the jury to return a verdict for defendants, which was done, and a judgment for defendants was entered thereon. From said judgment, the plaintiff appealed.

By admissions and undisputed evidence it is established that on Saturday, the 1st day of May, 1915, the defendants sold to plaintiff 39 head of yearling cattle, then in the stock-yards at Albion, Nebraska, for $36 a head, and plaintiff gave defendants his promissory note for the purchase price thereof, payable in six months and secured by chattel mortgage on said stock. The sale was completed on the following Monday by the defendants delivering said cattle to plaintiff at his pasture situated ten miles from Albion. When said note became due, on November 1, 1915, plaintiff gave a renewal note therefor, due in six months, with some additional security, and defendants retained both the original and renewal notes. When the renewal note became due and payment was requested, plaintiff, for the first time, notified defendants that said cattle were diseased when he bought them and demanded a reduction in the amount of the note for that reason. This was refused and, under pressure, plaintiff paid the note in full.

While the evidence is conflicting, there is sufficient, if believed, to show that, at the time of said sale, the defendants represented to the plaintiff that said cattle were all right; that he relied on said representation in purchasing the cattle; that the cattle were not all right, as some of them were afflicted with a disease commonly known as "pink-eye;" that plaintiff did not know that they had any disease until after they had been delivered and placed in his pasture and commingled with plaintiff's other cattle therein; that he first discovered that they were diseased the next day after they were so delivered; that three of the cattle so purchased of defendants died from said disease, many others, including cattle which plaintiff owned before said purchase and with which cattle they had been commingled, became infected with said disease

and plaintiff sustained damages in consequence thereof. Plaintiff testified that at the time the sale was made it was agreed that he should have a year's time, and that the renewal of the original note was made in pursuance of that agreement. Defendants deny this, and say that they extended the time of payment at plaintiff's request.

In its peremptory instruction to the jury the court said: "Gentlemen of the jury. The court holds that when the plaintiff gave the renewal note he had knowledge that the cattle had the pink-eye, and thereby waived any fraud in the original contract. You are, therefore, directed to return a verdict for the defendants." It will be noted that this instruction is based wholly on the proposition that the giving of the renewal note constituted a waiver of the alleged fraud as a matter of law. No other basis for said instruction or reason for giving it is suggested by the court or is urged by counsel for defendants, and the determination of this case rests wholly on whether said proposition correctly states the law.

It is a well-established and familiar rule that one who has been induced by fraud to purchase and agree to pay for property has, at his election, one of two remedies. (1) He may rescind the contract and recover back whatever he has parted with thereon. (2) He may affirm the agreement and maintain an action for damages resulting from the deceit, or, when sued by the vendor to recover the price for which the property was sold, may plead such damages by way of recoupment. *Pollock v. Smith,* 49 Neb. 864; *Kaup v. Schinstock,* 88 Neb. 95. That this is a general rule which applies in all cases where the contract has been fully executed before the discovery of the fraud is held by practically all authorities. By the weight of authority, said rule is not applicable in a case where the fraud is discovered while the contract is wholly executory. The reason given for this limitation of the general rule is that, where a person discovers the fraud when he is still wholly at liberty to save himself from its effects, what he thereafter does to his own injury is self-inflicted, and

one may not recover damages which resulted from his own acts instead of the act of the other party to the contract. *Bean v. Bickley,* 187 Ia. 689, and authorities cited.

There is, however, a sharp conflict in the authorities as to whether said general rule is applicable in a case where, at the time of the discovery of the fraud, the contract has been executed in part and a part is still executory. Some authorities seem to hold that, where the injured party discovers the fraud before the contract has been fully executed and continues to carry it out, he thereby condones the fraud and may not maintain an action for deceit. The principal case holding this doctrine is *Ponder v. Altura Farms Co.,* 57 Colo. 519, which is cited and quoted from in defendants' brief. In the opinion several cases are cited as supporting said proposition. Some of them, as well as some cited in defendants' brief, are not authority therefor, as the contracts under consideration therein were wholly executory when the fraud was discovered.

The other rule is that, if the contract be executed in whole or in part before the fraud is discovered, the purchaser need not rescind, but may, at his election, affirm the contract, retain the property, and also bring his action for damages on account of the deceit; in other words, that the general rule above stated applies in cases where the contract has been executed in part only. This is the doctrine announced and followed in *Bean v. Bickley, supra,* and *Koch v. Rhodes,* 57 Mont. 447. In the opinions in said cases the authorities supporting or bearing upon both of the foregoing rules are collated, discussed and analyzed.

The question as to which of the foregoing conflicting rules shall obtain in Nebraska does not appear to have been heretofore determined by this court and we are therefore at liberty to choose the one which appears to us to be right; and, after due consideration, we have concluded that the latter one is supported by the weight of authority and is more consonant with reason and justice.

We therefore hold that the general rule above stated applies ,where the contract is partly. executed before the discovery of the fraud as well as where it is wholly executed.

In the instant case, the sale was completed, the purchase price settled for by the giving of a promissory note, and the cattle were delivered and commingled with other stock before plaintiff discovered that they were diseased. All that remained to be done was the paying of the note, and, under the foregoing rule, the plaintiff had the right to affirm the contract and sue for the damages resulting from defendants' alleged deceit. Counsel's contention. that this right was waived by obtaining an extension of time and giving a renewal note, although supported by some of the authorities cited, is, we think, without merit. It would seem that in the cases cited the distinction between the effect of rescission and that of affirmance is not properly recognized. Where one denies the validity of a contract, rescinds, he cannot maintain that position if he seeks and obtains a change in its terms advantageous to himself, for this would be inconsistent with his position that there is no contract; but when, on discovering the fraud, he elects to affirm the contract, it becomes his duty to carry out its provisions, and there is no inconsistency in asking a betterment of the terms of the contract which, by his affirmance, he admits is valid. *Bean v. Bickley, supra.*

An independent right of action for damages, sustained as the result of defendants' fraud, accrued to plaintiff as soon as he discovered same and elected not to rescind. Waiver depends upon intention, and it cannot be held that plaintiff has released or waived said right of action unless his intention to do so clearly appears; and the obtaining an extension of time and giving the renewal note, while it may be evidence of an intention to waive, is not a waiver as a matter of law.

It follows that the action of the trial court in directing a verdict for the defendants was error for which its

judgment should be reversed; and said judgment is therefore reversed and remanded for further proceedings.

REVERSED.