MACKENZIE OIL COMPANY, a corporation of the State of Delaware, *v.* OMAR OIL & GAS COMPANY, a corporation of the State of Delaware, now PHOENIX OIL COMPANY.

*(October* 8, 1929.)

RICE and HARRINGTON, J. J., sitting.

*Robert H. Richards* and *Aaron Finger* for plaintiff.

*Josiah Marvel* and *W. D. Stewart* (of Thorp, Bostwick, Stewart and Reed, Pittsburgh, Pennsylvania) for defendant.

Superior Court for New Castle County, No. 82, March Term, 1923.

HARRINGTON, J., delivering the opinion of the court:

Before considering this case, perhaps we should state that it is conceded that by reason of the agreement of counsel, referred to in the statement of facts, no advantage can be taken of the fact that the T and B Pipe Line Company was not also made a party defendant in this action.

While now questioned by the defendant company, the guaranty by that company of the notes given by Clark is alleged in the complaint and is admitted in the answer filed by it. Further than that, its responsibility to the plaintiff of the notes in question is expressly admitted by the agreement of December 12, 1921, extending the maturity of such notes, and to which agreement both plaintiff and defendant were parties.

■ The finding of the Referee that the defendant guaranteed such notes is, therefore, sustained by the record.

■ Where the value of property has been misrepresented and in reliance on such misrepresentations a purchase has been induced, the damages suffered by the purchaser are ascertained by deducting the real value of such property from the amount which the purchaser, by reason of the misrepresentations of the seller, was induced to pay or to agree to pay therefor. *Williams v. Beltz, et al.,* 6 *Boyce* 554, 101 *A.* 905; *Id.,* 7 *Boyce* 360, 107 *A.* 298; *Smith v. Bolles,* 132 *U. S.* 125, 10 *S. Ct.* 39, 33 *L. Ed.* 279; *Sigafus v. Porter,* 179 *U. S.* 116, 21 *S. Ct.* 34, 45 *L. Ed.* 113; *Cameron v. First*

*Nat. Bank of Galveston (Tex. Civ. App.)*, 194 *S. W.* 469; *B. & H. Motor Co. v. Tucker (Tex. Civ. App.)*, 299 *S. W.* 949; *George v. Hesse,* 100 *Tex.* 44, 93 *S. W.* 107, 8 *L. R. A.* (*N. S.*) 804, 123 *Am. St. Rep.* 772, 15 *Ann. Cas.* 456.

This is not only the general rule applied in most states, but independent of statute, which will be considered later, it is not denied that it is the rule applied in the State of Texas, where the transactions involved in this case took place, and where the notes guaranteed by the defendant were payable.

Applying this rule, in order to ascertain the damages suffered by the defrauded vendee, it was the duty of the Referee to find the actual value of the Ackers lease at the time of the sale. He found that the production of well number one had been misrepresented, and instead of producing about two hundred barrels daily that its production did not exceed from one hundred and forty to one hundred and forty-five barrels per day; and that the value of the lease was, therefore, two hundred and fifty thousand dollars in cash, instead of the agreed sale price of four hundred thousand dollars. From a mere mathematical calculation, it, therefore, followed from this finding that the defendant, by reason of the misrepresentations of the plaintiff's agents, was damaged to the extent of one hundred and fifty thousand dollars.

The defendant claims that these conclusions are incorrect:

1. Because there is no evidence in the record to sustain the finding that the daily production of well number one did not exceed from one hundred and forty to one hundred and forty-five barrels and that as a matter of fact its production was considerably less than that amount.

2. Because the contract provided for the payment of the purchase price, one-half in cash and notes, and one-half in oil, and that the valuation of the lease should, therefore, have been found on both a cash and oil basis, and not wholly in cash.

As we view it, the first question needs very little consideration of the record. No daily gauges were taken and kept by the plaintiff company and the evidence as to production was so conflicting that it could not be reconciled; but as the Referee pointed out,

allowing the proper deductions for oil already produced and in the storage tanks, there is evidence in the testimony of Mackenzie that the average daily production of well number one for a period of twenty days prior to and ending on December 22, 1920, and, therefore, two days before the lease was turned over to Clark, was one hundred and thirty-nine barrels.

It is true that the same witness subsequently gave testimony that would justify the conclusion that the daily production of the lease greatly exceeded that amount, but it was for the Referee to decide by what testimony he would be governed.

Our conclusion, therefore, is that his finding that the daily production did not exceed from 140 to 145 barrels is sustained by the record and that it is unnecessary for us to consider the evidence or his analysis thereof any further.

As we have already indicated, the Referee found the value of the lease on a cash or money basis, and we know of no other rule that he could have applied. Even if a case could be conceived, where the contention of the defendant on this point could apply, as was clearly pointed out by the Referee, the contract did not provide for payment one-half in cash and one-half in a specific quantity of oil, but for the payment by the defendant of two hundred thousand dollars in cash and notes and two hundred thousand dollars by the delivery of a certain proportion of the oil to be produced from the lease; the valuation of which oil was to be ascertained in the manner provided for by the contract.

The defendant also contends that the rule above announced for ascertaining the damages suffered by the defrauded vendee in cases of fraudulent misrepresentations by the vendor, no longer applies in Texas because a statute of that state (*Rev. Civ. Stat.* 1925, *art.* 4004) now provides, in substance, that the vendee's damages in a case of this character must be ascertained by finding the difference between the value, as represented, or what the property would have been worth had the representations been true, and the actual value according to the facts; and that if this rule had been applied his damages would have materially exceeded the amount found by the Referee.

This statute was not pleaded or put in evidence before the Referee and he, therefore, correctly held that he could not consider its provisions. *Wolf v. Keagy,* 3 *W. W. Harr.* (33 *Del.*) 362, 136 *A.* 520.

He also held, however, that the evidence would sustain the conclusion that if the production had been as represented, that the fair market value of the lease would have been four hundred thousand dollars ($400,000), which was the agreed sale price.

Based on these facts he reached the conclusion that even though the Texas Statute had been properly before him, his finding as to the damages suffered by the vendee would have been the same. In any aspect of the case there was, therefore, no error in his finding as to the amount of such damages.

 Where a contract of sale has been induced by fraud, such contract is not absolutely void, but merely voidable at the option of the defrauded party; but by reason of the fraud practiced by him no particular favor is shown to the seller, and in order that the defrauded purchaser may put himself as near as possible in his original position, he may, as a general rule, on the discovery of the fraud at his election have any one of the following remedies in a Court of Law:

1. He may promptly repudiate and rescind the contract *in toto,* return the property bought and sue for the recovery of any part of the consideration paid by him. *Guffey v. Clever,* 146 *Pa.* 548, 23 *A.* 161; *Richardson v. Horn,* 8 *Houst.* 26, 30, 31 *A.* 896; *Cheney v. Dickinson (C. C. A.),* 172 *F.* 109, 110, 28 *L. R. A. (N. S.)* 359; *Smith v. Werkheiser,* 152 *Mich.* 177, 115 *N. W.* 964, 15 *L. R. A. (N. S.)* 1092, 1095, 125 *Am. St. Rep.* 406; 14 *A. & E.* 167, 169; 12 *R. C. L.* 152; 13 *C. J.* 396, 611.

2. He may affirm the contract, elect to keep the property bought, and to otherwise abide by its provisions, but bring an action for deceit for the recovery of the damages suffered by him by reason of the false representations of the seller. *Brown v. Zinc Mining Co.,* 231 *Mo.* 166, 132 *S. W.* 693, 140 *Am. St. Rep.* 509; *Guffey v. Clever,* 146 *Pa.* 548, 23 *A.* 161; *Van Natta v. Snyder,* 98 *Kan.* 102, 157 *P.* 432, *L. R. A.* 1918A, 102, 104; *Talcott v. Friend (C. C. A.),*

179 *F.* 676, 43 *L. R. A.* (*N. S.*) 649; *Bringen v. Wolf, et al.*, 106 *Neb.* 590, 184 *N. W.* 62, 63, 68; *Ranch v. Lynch*, 4 *Boyce* 446, 89 *A.* 134; *Page on Contracts, vol.* 1, 544; *Williston on Contracts*, § 1524; 14 *A. & E.* 167, 169; 13 *C. J.* 395, 611.

3. He may affirm the contract, but instead of suing the vendor for the damages suffered by him, where the facts justify it, he may wait for the vendor to take the initiative by bringing suit against him for his failure to perform his obligations under the contract, and by way of recoupment set up the damages suffered by him by reason of the fraudulent misrepresentations of the seller. *Exchange State Bank v. Buckley*, 198 *Iowa* 437, 194 *N. W.* 949; *Williston on Contracts*, § 1524; 13 *C. J.* 395, 611. See, also, *Thomas v. Grise*, 1 *Penn.* 381, 41 *A.* 883.

While there may be cases where the affirmance of a contract and the performance of its terms, with full knowledge of the facts, after the discovery of the fraud, would justify the conclusion that the defrauded vendee intended to waive his right against the vendor who perpetrated such fraud (27 *C. J.* 22-24); generally speaking, however, as in this case, the mere election to be bound by the provisions of a contract of sale induced by fraud does not operate as a waiver of the fraud or of the damages resulting therefrom. *Williston on Contracts*, § 1524; 12 *R. C. L.* 155; 13 *C. J.* 395; *Van Natta v. Snyder*, 98 *Kan.* 102, 157 *P.* 432; *L. R. A.* 1918A, 102, 104.

Where the defrauded vendee elects to recover the damages suffered by him in a suit against the vendor, whether the contract of sale be executed or executory on his part, his action is not on the contract but is in tort for deceit and such contract is merely the inducement to the action and collateral thereto. *Hines v. Brode*, 168 *Cal.* 507, 143 *P.* 729; *People's State Bank v. Hall*, 83 *Ind. App.* 385, 148 *N. E.* 486; *Packard v. Pratt*, 115 *Mass.* 405; *Fraser v. McLean*, 46 *U. C. Q. B.* 302; 27 *C. J.* 17, 38.

There are many cases of the violation of legal rights constituting torts where contracts are involved (1 *Chitty on Pleading*, 136, 211; 11 *C. J.* 6; *Randel v. Wright*, 1 *Harr.* 34; *Diver v. Miller*, 4 *W. W. Harr.* (34 *Del.*) 207, 148 *A.* 291); but this case does not re-

quire an extended discussion of the principles involved or the extent of that rule as it clearly applies where a contract is induced by false representations.

The action in such cases being in tort and not in assumpsit on the contract, it is therefore, unnecessary for the plaintiff to either allege and prove performance or ability, or willingness to perform any of the obligatory provisions of the contract on his part as a condition precedent to recovery. 1 *Chitty on Pleading* 136; *Hullinger v. Big Sespe Oil Co.,* 50 *Cal. App.* 6, 194 *P.* 742; *Paolini v. Sulprizio,* 201 *Cal.* 683, 258 *P.* 380; *Webb v. Implement Co.* (*Tex. Civ. App.*), 227 *S. W.* 499; *Pickrell v. Imperial Petrol Co.* (*Tex. Civ. App.*), 231 *S. W.* 412; *Pembrook v. Houston,* 41 *Cal. App.* 54, 181 *P.* 828; *Eames v. Morgan,* 37 *Ill.* 269; *Pierce v. Hellenic Amer. Realty Co.,* 76 *Misc. Rep.* 473, 135 *N. Y. S.* 605, 607; *Guild v. More,* 32 *N. D.* 432, 454, 155 *N. W.* 44; *Moran v. Tucker,* 40 *R. I.* 485, 101 *A.* 327, *L. R. A.* 1918A, 99.

While there are cases that use certain language that at a glance would seem to support the position that performance on the part of the vendee is essential to recovery by him in an action of deceit, in so far as they support this position they would seem to be based on a misconception of the real basis of the action. *Hines v. Brode,* 168 *Cal.* 507, 143 *P.* 729, and *Hickman v. Johnson,* 36 *Cal. App.* 342, 178 *P.* 145, which is based thereon, are perhaps the leading cases that may be cited in support of this position.

Later cases in the Supreme Court of California have, however, squarely repudiated this doctrine and pointed out that it could not be sustained on either reason or authority. They have further pointed out that correctly understood both *Hines v. Brode* and *Hickman v. Johnson* merely held that the pleader, in that state, must squarely rely upon either affirmance or rescission. *Hullinger v. Big Sespe Oil Co.,* 50 *Cal. App.* 6, 194 *P.* 742; *Paolini v. Sulprizio,* 201 *Cal.* 683, 258 *P.* 380.

It is true that the misrepresentations of the plaintiff's agent in this case are not relied upon in an action of deceit, but in the answer of the defendant, which while perhaps broader in some particulars than the ordinary plea of recoupment, is in the

nature of a plea of that character and for the purposes of this case, can be treated as such. Recoupment is not a right, but a remedy in the nature of a cross action (*Carver v. Adams, 38 Vt.* 500; *Second Nat. Bank v. Hemingray,* 31 *Ohio St.* 168; *Edge Moor Iron Co. v. Brown, etc., Co.,* 6 *Penn.* 10, 62 *A.* 1054; 19 *Enc. Pl. & Pr.* 753, 754) that may be applied by the defendant in an action in certain cases to wholly offset or reduce the plaintiff's demand. Its application is based on principles of justice where it would be contrary to equity and good conscience to permit a full recovery by the plaintiff, where the defendant has claims growing out of the same transaction, which while they could be litigated in another action could also be properly and conveniently litigated in the same action, thereby preventing the necessity of two suits. *Carey v. Guillow,* 105 *Mass.* 18, 7 *Am. Rep.* 494; 40 *Am. Dec., note* 320; *Edge Moor Iron Co. v. Brown,* 6 *Penn.* 10, 62 *A.* 1054.

While not necessary to the decision of this case, perhaps we might add that the principles applicable to a plea of recoupment have been given a broader application in this country than in England, but they have always been applied in both contract and tort actions; and generally speaking at least, their application apparently usually depends more upon the right of the matter and the convenience of their application than on the form of the remedy that would be required in a separate action. *Carey v. Guillow,* 105 *Mass.* 18, 7 *Am. Rep.* 494; *Edge Moor Iron Co. v. Brown, etc.,* 6 *Penn.* 10, 62 *A.* 1054; *Doe v. Roe on the Demise of Alexander,* 2 *Houst.* 321; *Whitehall v. Squire, Carth.* 104; *Mountford v. Gibson,* 4 *East.* 44 (102 *Eng. Rep.* 900); *Dushane v. Benedict,* 120 *U. S.* 630, 7 *S. Ct.* 696, 30 *L. Ed.* 810; *Harrington v. Stratton,* 22 *Pick.* (*Mass.*) 510; *Johnson v. White Mountain Creamery Ass'n,* 68 *N. H.* 437, 36 *A.* 13, 73 *Am. St. Rep.* 610; 40 *Am. Dec.* 325; *Sutherland on Damages, vol.* 1, §§ 179, 180; *L. R. A.* 1916C, 497.

At any rate that they apply where false representations are set up by the defendant, though sued in a contract action, is beyond dispute. Whatever limitations there may have been on the rule in England, in this country the fact that the suit is on the notes and not on the contract, pursuant to which such notes were given, does

not affect the application of the principles above referred to. *Harrington v. Stratton,* 22 *Pick.* (*Mass.*) 510; 40 *Am. Dec.* 327; 24 *R. C. L.* 852.

Perhaps we should also add that any possible question as to whether the defense set up in this case was personal to the maker of the notes, and not a matter of which the defendant could take advantage (*Clough v. Cook,* 10 *Del. Ch.* 175, 87 *A.* 1017) is prevented by the agreement of counsel pursuant to which the answer was filed.

 Being in the nature of a cross demand sounding in tort, the same general principles that are applied to the pleadings and proof in an action of deceit for false representations, would seem to apply here, though the same matter is set up under a plea of recoupment. 19 *Pl. & Pr.* 753, 764; *Tarwater v. Hannibal,* 42 *Mo.* 193.

Applying these rules, no proof of performance on the part of Clark, the vendee, was necessary in this case, in order to permit the deduction by the defendant of the damages suffered by such vendee by reasons of the false representations of the plaintiff. *Paolini v. Sulprizio,* 201 *Cal.* 683, 258 *P.* 380. See, also, *Riegel v. Franzel* (*Sup.*), 191 *N. Y. S.* 126.

Performance or non-performance of the contract does, however, have a material bearing on the question of damages in a case of this character. Whether the purchaser seeks a remedy by the action of deceit, or counterclaims, under a plea of recoupment, having affirmed the contract, as we have already seen, he is bound by its provisions; and the damages suffered by the seller by reason of the non-performance of the purchaser, if such damages can be ascertained from the evidence (*Paolini v. Sulprizio,* 201 *Cal.* 683, 258 *P.* 380), as well as the purchaser's own damages, arising from misrepresentations by the seller inducing the sale, must be taken into consideration in reaching a conclusion as to the proper judgment to be entered. *Hines v. Brode,* 168 *Cal.* 507, 143 *A.* 729; *Hullinger v. Big Sespe Oil Co.,* 50 *Cal. App.* 6, 194 *P.* 742; *Paolini v. Sulprizio,* 201 *Cal.* 683, 258 *P.* 380; *Pickrell v. Imperial Petrol. Co.* (*Tex. Civ. App.*), 231 *S. W.* 412.

While the Referee, in effect, found that Clark had been damaged to the extent of one hundred and fifty thousand dollars by the misrepresentations of the plaintiff, he also found that he had failed to carry out his part of the contract, in that in addition to his failure to pay the notes in controversy, he had only paid thirty-one thousand five hundred and twenty-seven dollars and sixty cents on account of the two hundred thousand dollars of the purchase price that was to have been paid in oil.

He further found that while the contract of sale provided for the completion of well number two, the drilling of certain additional wells "and the proper maintenance thereof, together with well number one, after the completion thereof, until the vendor shall have been paid in full," no such wells were ever drilled by Clark, or by any one else for him.

The only facts found by the Referee that can have any possible bearing on the failure of Clark to carry out his obligations under the contract are that the production of well number one as well as the production of that field in general, declined early in 1921 and that the price of oil also had a decided fall about that time.

With the exception of the difficulties that had to be overcome to complete well number two, no other reasons for the failure of Clark to comply with his contract appear. None of these facts tend to show, however, exactly how much oil would have been produced had the additional wells been bored and thereafter properly maintained, and, therefore, applying the usual rules, what damages were suffered by the plaintiff by the default of Clark in this particular.

The plaintiff company concedes this fact, but contends that as Clark in 1920 had definitely agreed to pay two hundred thousand dollars of the purchase price in oil, to be produced from the lease, and had not only failed to make the agreed payments, but had also utterly failed to take the agreed steps to produce the commodity from which that sum was payable, the damages suffered by the plaintiff would be measured by that portion of the said sum of two hundred thousand dollars that still remained unpaid.

The contract provided for a sale price of four hundred thousand dollars, two hundred thousand dollars of which was to "be paid * * * by the delivery of one-half (½) of all oil produced from said lease * * * until the value of the oil so delivered shall have aggregated the sum of two hundred thousand dollars."

The whole of the purchase price was, therefore, definitely agreed upon, though two hundred thousand dollars of it was payable out of a particular commodity which was to be produced from the lease in a certain way, by the efforts of Clark. There is nothing in the finding of the Referee to indicate that well number one or the field in general ceased to produce in 1921 or any other time, or that oil had no value after December, 1920. The necessary inference would, therefore, seem to be that the required oil could have been produced if Clark had bored the wells provided for by the contract.

Under the law of Texas, his neglect or refusal to take the necessary steps to produce such oil made him liable to the plaintiff for the agreed sum of two hundred thousand dollars less payments already made. *Empire Gas & Fuel Co. v. Pendar (Tex. Civ. App.),* 244 *S. W.* 184; *Honaker v. Guffey Petrol. Co. (Tex. Civ. App.),* 294 *S. W.* 259; *Smith v. Louisiana Oil Ref. Corp. (C. C. A.),* 12 *F.* (2d) 378; 13 *C. J.* 631.

*Moore v. Jones (Tex. Civ. App.),* 278 *S. W.* 326, cited by the defendant is not only not inconsistent with this conclusion, but cites *Empire Gas & Fuel Co. v. Pendar* with approval. While applied in some states, other than Texas (13 *C. J.* 631), this rule as to the measure of damages, in cases of this character, has been criticised, however, on the ground that it in effect reads into the contract an alternative clause as to payment that does not appear in it. *Williston on Contracts,* § 1398; *Sutherland on Damages, vol.* 3, §§ 660, 661; *Paige on Contracts,* § 2809; *Roberts v. Beatty, 2 Pen. & W. (Pa.)* 63, 21 *Am. Dec.* 422; *Elliott on Contracts,* § 1886.

As we are considering a Texas contract, and the above rule as to the measure of damages applies in that state, we are bound by that rule, and it is unnecessary for us to consider the soundness of the principle on which it is based. *Williams v. Beltz, et al.,* 6 *Boyce* 554, 101 *A.* 905; *Id.,* 7 *Boyce* 360, 107 *A.* 298; *Northern Pac. R. R.*

*Co. v. Babcock*, 154 *U. S.* 190, 14 *S. Ct.* 978, 38 *L. Ed.* 958; *Sandham v. Grounds* (*C. C. A.*), 94 *F.* 83; *Atwood v. Walker*, 179 *Mass.* 514, 61 *N. E.* 58; 17 *C. J.* 719.

The defendant contends that the damages suffered by the plaintiff above referred to have not been litigated in this action and that he, therefore, has had no opportunity to produce any evidence or be heard on that question. Whatever may have been the impression of the parties, the plea of recoupment, or the plea in the nature thereof, filed by the Omar Company, squarely raised that issue and while no evidence of the usual character in cases of breach of contract was produced by either party, the legal question above referred to was considered by both parties in their briefs.

In support of this contention, the defendant company relied on the clause of the contract providing that the vendee "should develop such lease for oil in a thorough and reasonable manner consistent with the best practice in such (its) vicinity." The same clause adds, however, "and to promptly begin and prosecute with effect the drilling of wells numbers two, three, and four" and is followed by the clause providing for maintenance of such wells, after their completion, and until the vendee should be fully paid, above quoted.

The obligation of Clark, with respect to the additional wells, provided for, was, therefore, fixed and definite, and not in any way dependent upon evidence as to the business practices in the vicinity of the lease.

The contract of guaranty on each of the notes was executed in the name of the defendant corporation "By N. F. Clark, President and Attorney in Fact." As we have already pointed out, the authority of Clark to bind the defendant as guarantor is admitted in the answer, and that the notes in question were both executed and payable in the State of Texas, also clearly appears from the record. That the validity of the contract of the defendant is, therefore, governed by the laws of that state seems clear.

The *Texas Statute* (*Acts of* 1892 [*Rev. St.* 1925, *art.* 5071]) provides that

"the parties to any written contract may agree to and stipulate for any rate of interest not exceeding ten per cent per annum on the amount of the con-

tract; and all written contracts whatsoever, which may in any way, directly or indirectly, provide for a greater amount of interest shall be void and of no effect for the amount or value of the interest only; but the principal sum of money or value of the contract may be received and recovered."

Basing his conclusion on *Yaws v. Jones* (*Tex. Sup.*), 19 *S. W.* 443, Mr. Hilles, sitting as referee in this case, held that the interest provisions in the notes in question were valid in the State of Texas; our attention has been called to no case that overrules the Texas decision in question, consequently we are bound by it. Including attorneys' commissions at the rate of five per cent. as provided by the Delaware statute, the Referee, therefore, correctly held that two hundred thousand, one hundred forty-two dollars and five cents was due on the notes guaranteed by the defendant company.

Applying the Texas rule as to the measure of damages, for the failure of Clark to carry out his part of the contract, the amount due from him to the plaintiff was greater, however, than the one hundred and fifty thousand dollars damages suffered by him because of the mispresentations of the plaintiff.

By reason of that fact, our conclusion is that the Referee correctly held that the whole amount due on the notes must be paid by the defendant, the guarantor on such notes, without any deductions whatever.

This disposes of all of the exceptions filed by the defendant that were pressed at the argument, or in its brief.

The plaintiff company contends that by reason of the stipulation entered into by counsel, any sum due it from Clark by way of damages for the breach of his contract, in excess of the one hundred and fifty thousand dollars damages suffered by him, should be added to the amount due on the notes and compose a part of the judgment to be entered thereon; but we are unable to agree with this contention. The declaration is based on the notes guaranteed by the defendant, and not on the contract of sale.

While the answer of the defendant sets up certain damages suffered by Clark, by reason of the misrepresentations of the plaintiff, in inducing such contract, it is only involved because of that fact and to that extent and in the absence of some clear provision

to that effect, the stipulation of counsel can only refer to the issue raised by the pleadings.

The plaintiff, also, excepted to the finding of the Referee that Clark was not estopped by the clause in the contract which in substance stated that the lease had been inspected by him through his agents, and that there had been no representations or warranties other than as to title.

He conceded, however, that both the Referee and this Court were bound by a prior ruling of the Supreme Court of this state on this question (3 *W. W. Harr.* [33 *Del.*] 259, 138 *A.* 392), and stated that he had merely filed this exception for the purpose of asking the Supreme Court to reconsider its ruling.

For the reasons above given, the award made by the Referee is affirmed.

Note.—This case was taken to the Supreme Court on writ of error. For the proceedings in that court, see next case.